**STATE of Minnesota, Respondent,**

v.

**Ignacio LOPEZ, Appellant.**

**No. C7–97–1848.**

Supreme Court of Minnesota.

Dec. 10, 1998.

---

John M. Stuart, Minnesota State Public Defender, Sharon E. Jacks, Assistant State Public Defender, Minneapolis, for Appellant.

Hubert H. Humphrey, III, State Attorney General, St. Paul, Michael Freeman, Hennepin County Attorney, Minneapolis, Paul R. Scoggin, Asst. Hennepin Co. Atty., for respondent.

## OPINION

PAGE, Justice.

■ Appellant Ignacio Lopez was convicted of first-degree premeditated murder in violation of Minn.Stat. § 609.185(1) (1996) for the August 27, 1996, shooting death of Dennis Mejia. In this appeal, Lopez raises the issue of whether the trial court committed prejudicial error when it refused to instruct the jury on "voluntary intoxication."[1] We affirm based on our conclusion that, on the facts presented here, Lopez was not entitled to a voluntary intoxication instruction.

During the summer of 1996, Amy Tanner met Lopez and became friends with him. Through Lopez, Tanner met Mejia, a 17-year-old Honduran immigrant. Tanner and Mejia began dating and eventually began living together. On the afternoon of August 27, 1996, Lopez shot and killed Mejia while Mejia was walking home from a Minneapolis park with Tanner and her young daughter. At trial, Tanner testified that she saw Lopez jump out of the passenger door of a car carrying a "big gun." Tanner called out to Lopez, begging him not to shoot. Mejia began running back towards the park. Lopez raised his gun, pointed it at Mejia, and fired. The bullet struck Mejia in the head, and he fell face down in the street.

The events leading up to the shooting were described at trial as follows. Lopez spent most of the 24-hour period before the shooting partying with a group of his friends. On August 26, Lopez was at a river party where some of the partygoers were drinking beer and smoking marijuana. However, there was no direct evidence presented at trial indicating that Lopez was one of the people drinking or smoking marijuana at this river party. Around dusk, Lopez, along with Tanner, her sister Rolanda Laroque, a friend named Hugo, and an unnamed friend, decided to drive to Chicago. When the group left Minneapolis, Hugo, the driver, made a wrong turn, and ended up driving north instead of east. When they realized their error, the group abandoned the trip to Chicago and, instead, drove to a party in Minneapolis. After the police broke up that party, the group headed to Tanner's house, where the partying continued.

---

1. At oral argument Lopez's counsel raised a procedural issue regarding Lopez's ability to obtain a copy of his trial transcript in his native language for use in preparing a pro se supplemental brief. Lopez's counsel then made a motion to the court requesting translation of the trial transcript so that Lopez could file a pro se brief. Counsel for the state did not respond to that motion. In addition to his counsel's motion, Lopez has made a number of informal pro se requests asking the court to require translation of his trial transcript so that he could adequately present his pro se claims. None of the issues raised in the motion at oral argument or in Lopez's informal pro se requests have been briefed or fully argued and, therefore, are not properly before the court at this time. In the interest of justice, Lopez will not be precluded from raising any of the issues related to the translation of his trial transcript or his pro se claims in a postconviction petition. *Cf. State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (stating that if a defendant takes a direct appeal he may not thereafter raise in a postconviction proceeding any matter which he raised on direct appeal or which he knew at that time but did not raise). The court notes that although Minn. R.Crim. P. 28.02, subd. 5(12)-(19), provides for the filing of pro se supplemental briefs and for the defendant's access to the transcript for that purpose, neither the right to file a supplemental brief nor the right to access to the transcript in those circumstances is constitutionally required. *See Black v. State*, 560 N.W.2d 83, 86 (Minn.1997).

Around 4:00 a.m., Mejia arrived at the house and, at some point, got into an argument with Lopez about Tanner's plan to go to Chicago with Lopez. The argument escalated into a fight, and Mejia cut Lopez with a knife. Lopez was taken to Hennepin County Medical Center (HCMC) where he had his wounds treated. After leaving HCMC, Lopez went to another party in South Minneapolis, arriving around 9:30 a.m. Lopez was angry about the fight with Mejia and told people at the party that he was going to "kill [Mejia]," and asked people at the party for a gun he could use to shoot Mejia. Lopez was given a gun and was seen loading it. As he loaded the gun, Lopez was heard saying, "[Mejia] you shouldn't have done that" and that he was "going to shoot him."

Lopez left the party with the gun, looking for Mejia. When he returned, approximately 20 minutes later, he was laughing, saying "it's over" and using hand gestures suggesting a "head exploding." Lopez also told one partygoer that he shot Mejia "between the eyes." Later that same evening, Lopez was watching the evening news with Laroque. As reports of Mejia's murder were being broadcast, Lopez hugged Laroque and said that he was sorry that Tanner and her daughter had to see the shooting. The next morning, Lopez told Laroque he was leaving for California.

A friend of Lopez received a voice-mail message indicating that the speaker had shot Mejia. That friend, and another, who listened to the message, identified the voice of the person who left the message as belonging to Lopez. Lopez was eventually arrested in Chicago and returned to Minneapolis to stand trial for Mejia's murder.

While there was testimony at trial indicating that the group of people Lopez was with on August 26 and 27, 1996, had been drinking beer and smoking marijuana and that Lopez may have done some of the drinking, there was no testimony or other evidence presented as to the quantity he may have drunk or of his being in an intoxicated state. And there was no testimony or other evidence even suggesting that Lopez was using marijuana.

Before the trial court instructed the jury, Lopez's defense counsel, arguing that Lopez was too intoxicated to form the requisite intent required for a first-degree murder conviction, asked the trial court to instruct the jury on voluntary intoxication. Based on the evidence presented, the trial court concluded that Lopez failed to present any evidence at trial that he was intoxicated at the time of the shooting and denied the request. Lopez now argues that the trial court's denial was in error because it prevented him from presenting a complete defense based on his contention that there was ample evidence that he was intoxicated at the time of the shooting.

"No error results from a [court's] refusal [to give a requested jury instruction] where the evidence does not support the proposed instruction and no abuse of discretion is shown."[2] However, a defendant is entitled to an instruction on "his theory of the case if there is evidence to support it."[3]

Minnesota Statutes section 609.075 provides:

An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.[4]

Before the intoxication defense comes into play, a defendant must offer intoxication as an explanation for his actions.[5] "The mere

2. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn. 1985) (citing *State v. Villalon*, 305 Minn. 547, 551, 234 N.W.2d 189, 192 (1975)).

3. *State v. Ruud*, 259 N.W.2d 567, 578 (Minn. 1977).

4. Minn.Stat. § 609.075 (1996); *see also State v. Wahlberg*, 296 N.W.2d 408, 418 (Minn.1980).

5. *See State v. Jacobs*, 292 Minn. 41, 44, 192 N.W.2d 816, 818 (1971) ("[M]ere testimony concerning drinking was not in itself enough to raise the issue; the defendant must at least offer the drinking as an explanation of his actions.")

fact of a person's drinking does not create a presumption of intoxication, and the possibility of intoxication does not create the presumption that a person is rendered incapable of intending to do a certain act." [6] Put another way, a defendant cannot offer intoxication as an explanation for his action solely by introducing evidence that he may have been drinking.[7]

 Based on our review of the record, we conclude that the trial court here did not err when it declined to instruct the jury on voluntary intoxication because the evidence in the record does not support the giving of the instruction. The evidence at trial established that Lopez spent August 26 and parts of August 27, 1996, with a group of friends going from one party to another and that some people in the group were drinking and smoking marijuana at those parties. The evidence does not provide an indication of how much beer, if any, Lopez may have consumed, or whether he displayed any indicia of intoxication at any time before or immediately after the shooting. Indeed, the only direct evidence regarding whether Lopez was intoxicated came from Dougles Huff, a physician's assistant at HCMC, who was involved in Lopez's treatment for the knife wounds inflicted by Mejia. That treatment took place between approximately 7:30 and 9:30 a.m. on August 27th. Huff testified that he did not note and could not recall any evidence of alcohol or drug use by Lopez.

In this case, the evidence at trial suggests only that Lopez may have done some beer drinking during the 24 hours before he killed Mejia. This evidence does not support Lopez's theory of the case because mere evidence of some drinking, by itself, is not enough to raise a question for the jury as to a defendant's intoxication. More is needed. Lopez's failure to present any evidence of intoxication, beyond some possible drinking, constitutes a failure to offer intoxication as an explanation for his actions. Therefore, we conclude that Lopez's claim that the trial court erred in refusing to instruct the jury on voluntary intoxication is without merit.

Affirmed.

---

**6.** *State v. Lund,* 277 Minn. 90, 92, 151 N.W.2d 769, 771 (1967).

**7.** *See State ex rel. Terry v. Tahash,* 278 Minn. 100, 103, 153 N.W.2d 227, 229 (1967).