**Ronald Lindsey REED, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A10–39.

Supreme Court of Minnesota.

Dec. 29, 2010.

Howard Bass, Bass Law Firm, PLLC, Burnsville, MN, for appellant.

Lori Swanson, Minnesota Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant Ramsey County Attorney, St. Paul, MN, for respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Ronald Lindsey Reed was convicted of conspiracy and aiding and abetting the murder of a police officer. On direct appeal, we affirmed Reed's convictions. *State v. Reed (Reed I)*, 737 N.W.2d 572 (Minn.2007). Reed then sought postconviction relief, asserting that the district court violated his constitutional right to self-representation, the statute of limitations barred his prosecution, trial and appellate counsel provided ineffective assistance, and a new trial was required because a witness recanted her testimony. The postconviction court denied Reed's petition without a hearing. We affirm.

We fully discussed the facts of this case in Reed's direct appeal. *See Reed I*, 737 N.W.2d at 578–79. We focus here on the facts relevant to this proceeding.

Police officer James Sackett was shot and killed while responding to a false emergency call on May 22, 1970. Soon after the killing, the caller, Constance Trimble–Smith, was tried for the killing and testified that someone told her to make the fictitious report, but did not identify the person. She was acquitted. Much later, on January 12, 2005, Reed was indicted for conspiracy to commit murder in violation of Minn.Stat. § 609.175, subd. 2 (2010), and aiding and abetting murder under Minn.Stat. §§ 609.05, subd. 1, and 609.185(a)(1) (2010).

On February 7, 2006, two weeks before opening statements were delivered in his trial, Reed requested the district court to appoint new counsel, stating that he was unhappy with his representation. The court denied the motion, holding that Reed's attorneys had, in the court's view, "presented a zealous defense on behalf of Mr. Reed." Reed asked if he could read

his motion into the record. The court accepted Reed's written motion, but refused to read it into the record, stating, "I have indicated for the record exactly what his request is and that it is based on his feeling that the defense counsel have not adequately presented or prepared their case for trial." The court filed Reed's motion under seal.

Trimble–Smith testified for the State at Reed's trial. Trimble–Smith stated that Reed told her to make the 1970 telephone call that lured Sackett to the location of the shooting. There were some inconsistencies between the testimony she provided at trial and the testimony she provided to the grand jury that indicted Reed, which the prosecution highlighted during direct examination. At trial, she testified that it was impossible for Reed to have been the shooter and that Reed did not know the shooting would result from the phone call.

The State also presented testimony from John Griffin, who stated that Reed essentially confessed to shooting Sackett when Griffin and Reed met in the early 1980s. Another witness, Anthony Foster, testified that he, Reed, and two others were together in Foster's apartment two or three days after the murder. Foster stated that Reed was acting "more subdued," but that Reed did not say anything about the murder when the topic arose.

Reed was found guilty of conspiracy to commit murder and aiding and abetting murder. Based on Reed's conviction for aiding and abetting first-degree murder, the district court sentenced Reed to life imprisonment. The court did not impose a sentence for the conspiracy charge.

On direct appeal, we affirmed Reed's conviction for aiding and abetting first-degree murder. *Reed I*, 737 N.W.2d at 590. The postconviction court denied Reed's petition for postconviction relief. Reed now appeals from the postconviction court's denial of postconviction relief.

## I.

■ In his petition for postconviction relief, Reed argued that the district court violated his constitutional right to self-representation when it denied his February 7, 2006, motion for substitute counsel.[1] The postconviction court denied this claim as procedurally barred under *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), and, in the alternative, denied the claim as lacking factual support.

■ We review the denial of postconviction relief for abuse of discretion. *Quick v. State*, 692 N.W.2d 438, 439 (Minn. 2005). Under this standard of review, a matter will not be reversed unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings. *Dobbins v. State*, 788 N.W.2d 719, 725 (Minn.2010). We review issues of law de novo. *Butala v. State*, 664 N.W.2d 333, 338 (Minn.2003).

■ The *Knaffla* rule provides that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. This bar also applies to claims that should have been

---

1. Reed conflates the issues relating to requests for substitute counsel and requests for self-representation. Because our *Knaffla* analysis in this case does not depend on the precise nature of the claim raised in Reed's February 7, 2006, motion, we assume without deciding that Reed's motion raised a self-representation claim, although the post-conviction court found that the 2006 motion was for substitution of counsel rather than self-representation.

known on direct appeal. *King v. State*, 649 N.W.2d 149, 156 (Minn.2002). There are two exceptions to the *Knaffla* bar: "(1) if the claim presents a novel legal issue or (2) if fairness requires review of the claim and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal," a postconviction court may consider the claim. *Quick*, 692 N.W.2d at 439. The second prong requires that the "claim must have merit and must be asserted without deliberate or inexcusable delay." *Wright v. State*, 765 N.W.2d 85, 90 (Minn. 2009).

Reed raised the self-representation claim on direct appeal in *Reed I*. His supplemental brief to this court summarized the basic contents of the February 7, 2006, motion. We rejected Reed's self-representation claim on direct appeal. *Reed I*, 737 N.W.2d at 587. Consequently, we conclude that the postconviction court did not abuse its discretion when it determined that *Knaffla* barred the claims raised in his February 7, 2006, motion because the record demonstrates that Reed raised the same issue on direct appeal.

Relying on the second exception to the *Knaffla* rule, Reed argues that *Knaffla* does not bar the claims because he could not adequately argue the self-representation claim raised in his motion. Reed contends he could not raise the issue completely because the motion was drafted by his brother, sealed by the court, not used by appellate counsel, and unseen by Reed until after his direct appeal. Reed asserts that *State v. Lopez*, 587 N.W.2d 26 (Minn. 1998), supports his contention. We disagree.

In *Lopez*, the defendant was essentially unable to prepare a pro se supplemental brief on direct appeal because the trial transcripts had not been translated into his native language. *Id.* at 27 n. 1. We noted that "[i]n the interest of justice, Lopez will not be precluded from raising any of the issues related to the translation of his trial transcript or his pro se claims in a postconviction petition." *Id.* Reed's analogy to *Lopez* is not persuasive. Trial transcripts are prepared by others and are not otherwise available to the defendant, whereas Reed's brother drafted the two-page motion pursuant to Reed's direction. Because Reed directed the creation of the motion, Reed knew the contents of his motion. Thus, unlike the defendant in *Lopez*, nothing prevented Reed from raising on direct appeal the claim raised in his February 7, 2006, motion, and he actually raised the claim. The interests of justice exception to the *Knaffla* bar does not apply when a party simply believes an argument actually raised on direct appeal could have been more complete.

## II.

Reed argues that the statute of limitations applicable at the time of the killing prohibits prosecution. *See* Minn.Stat. § 628.26 (1974)[2] (stating the limitations period for all crimes, except murder, is three years). The postconviction court denied the claim as barred by *Knaffla*. We will not reverse the denial of postconviction relief unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings. *Dobbins v. State*, 788 N.W.2d 719, 725 (Minn.2010).

Reed knew of, but did not raise, the statute-of-limitations defense in his direct appeal. Because Reed offers no reason for his failure to raise the issue on direct appeal, the statute-of-limitations claim

**2.** The 1974 edition of Minnesota Statutes is the most recent edition containing the version of section 628.26 in effect at the time of the murder.

would ordinarily be barred by *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. Reed contends, however, that a valid statute-of-limitations defense deprives the district court of subject matter jurisdiction and therefore cannot be barred. We disagree.

■ There is "a critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule." *Kontrick v. Ryan*, 540 U.S. 443, 456, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Subject-matter-jurisdiction claims relate to "the courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (internal quotation marks omitted). In *Cotton*, the Court explained that a federal district court "has jurisdiction of all crimes cognizable under the authority of the United States." *Id.* at 630–31, 122 S.Ct. 1781 (quoting *Lamar v. United States*, 240 U.S. 60, 65, 36 S.Ct. 255, 60 L.Ed. 526 (1916)). Although an indictment that fails to state a claim on its face affects the merits of the case, the defective indictment "do[es] not deprive a court of its power to adjudicate a case." *Id.* at 630, 122 S.Ct. 1781. In other words, "a ruling that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment." *Id.* at 631, 122 S.Ct. 1781 (internal quotation marks omitted). Because a subject-matter-jurisdiction claim "involves a court's power to hear a case, [the claim] can never be forfeited or waived." *Id.* at 630, 122 S.Ct. 1781. On the other hand, inflexible claim-processing rules are "unalterable on a party's application but can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Eberhart v. United States*, 546 U.S. 12, 15, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (internal quotation marks omitted). In *Eberhart*, the Court held that the seven-day deadline for filing a motion for new trial contained in Fed. R.Crim.P. 33(b)(2) was an inflexible claim-

processing rule, which could be waived. 546 U.S. at 13, 19, 126 S.Ct. 403.

We recognized the distinction between a rule governing subject matter jurisdiction and an inflexible claim-processing rule in *Rubey v. Vannett*, 714 N.W.2d 417, 422 (Minn.2006) (holding that the 60–day deadline for hearing a new trial motion was not jurisdictional, but was instead a claim-processing rule). In *In re Civil Commitment of Giem*, 742 N.W.2d 422, 427 n. 6 (Minn. 2007), we noted that courts should avoid using the term "jurisdictional" when referring to time prescriptions, even rigid ones, because the term "jurisdictional" should be reserved for prescriptions affecting "a court's adjudicatory authority."

■ We conclude that the statute of limitations, Minn.Stat. § 628.26 (1974), is a claim-processing rule, and not a jurisdictional rule that deprives a district court of its power to adjudicate a case. First, the purpose of a criminal statute of limitations is not to prescribe or limit a court's adjudicatory authority. Instead,

> [t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts.... Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time....

*Toussie v. United States*, 397 U.S. 112, 114, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). Second, the United States Supreme Court has held that a statute-of-limitations defense "is not jurisdictional." *Day v. McDonough*, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006). In *Day*, the Court compared the statute-of-limitations defense to "other threshold barriers" such as "exhaustion of state remedies, procedural default, [and] nonretroactivity." *Id.* Before its decision in *Day*, the Court im-

plicitly recognized that a statute-of-limitations defense is not jurisdictional when the Court held that a criminal defendant is able to waive a statute-of-limitations defense. *Spaziano v. Florida*, 468 U.S. 447, 454–56, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Third, in the civil context, we have recognized the distinction between filing requirements that prescribe a district court's jurisdiction and a "statute of limitations, [which] is subject to waiver." *Carlson v. Indep. Sch. Dist. No. 623*, 392 N.W.2d 216, 220–21 (Minn.1986) (internal quotation marks omitted); *see also Stewart v. State*, 764 N.W.2d 32, 34 (Minn.2009) (holding that an untimely filed petition for postconviction relief "should not be considered on the merits"); *Ortiz v. Gavenda*, 590 N.W.2d 119, 122 (Minn.1999) ("[T]he limitation provisions in a statutorily created cause of action are jurisdictional, requiring dismissal for failure to comply . . . .").

Reed contends that we reached the opposite conclusion in *State v. Tupa*, 194 Minn. 488, 260 N.W. 875 (1935). We disagree. *Tupa* did not hold that the statute-of-limitations defense may never be waived, only that "[u]nder [Tupa's] circumstances we do not believe that defendant intended to waive or relinquish a 'known right.'" *Id.* at 497, 260 N.W. at 879.

■ In summary, we conclude that a statute-of-limitations defense is a claim-processing rule, which is subject to waiver. We also conclude that the postconviction court did not abuse its discretion when it concluded that *Knaffla* barred Reed's statute-of-limitations defense. Reed knew of the statute-of-limitations defense on direct appeal, and· he offers no reason for his failure to raise the issue on direct appeal.

### III.

Reed argues that the postconviction court abused its discretion when it denied his postconviction claims of ineffective assistance of trial and appellate counsel. We disagree.

We will not reverse the denial of postconviction relief unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings. *Dobbins v. State*, 788 N.W.2d 719, 725 (Minn.2010). The postconviction court held that the ineffective-assistance-of-trial-counsel claim was *Knaffla* barred and that the ineffective-assistance-of-appellate-counsel claim failed on its merits. For the reasons set forth below, we conclude that the postconviction court did not abuse its discretion when it denied Reed's ineffective-assistance-of-counsel claims.

#### A. Ineffective Assistance of Counsel—Knaffla *Bar*

■ The *Knaffla* rule bars a postconviction ineffective-assistance-of-trial-counsel claim if the claim is based solely on the trial record and the claim was known or should have been known on direct appeal. *Evans v. State*, 788 N.W.2d 38, 44 (Minn.2010). *Knaffla* does not bar an ineffective-assistance-of-counsel claim if the postconviction court requires additional evidence regarding an act or omission that counsel allegedly committed off the record to be able to determine the merits of the ineffectiveness claim. *See Barnes v. State*, 768 N.W.2d 359, 364 (Minn.2009). Similarly, an ineffective-assistance-of-*appellate*-counsel claim is not subject to the *Knaffla* bar when it cannot be said that the defendant knew or had a basis to know about the claim at the time of direct appeal. Reed's ineffective-assistance-of-trial-counsel claim can be determined from the district court record, and therefore Reed's failure to raise the claims on direct appeal triggered the *Knaffla* bar. But because Reed's ineffective-assistance-of-appellate-

counsel claim is not *Knaffla* barred, and the claim is partially based on appellate counsel's failure to raise the ineffective-assistance-of-trial-counsel claim on direct appeal, we address the merits of both the ineffective-assistance-of-counsel claims.

### B. Ineffective Assistance of Counsel— Merits

■■■■ To have a valid claim for ineffective assistance of counsel, Reed must show "that counsel's representation fell below an objective standard of reasonableness," and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Fields v. State,* 733 N.W.2d 465, 468 (Minn.2007) (internal quotation marks omitted) (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The objective reasonableness prong has been described as "representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Gassler,* 505 N.W.2d 62, 70 (Minn.1993). Counsel's performance is presumed reasonable. *Schneider v. State,* 725 N.W.2d 516, 521 (Minn.2007). "What evidence to present to the jury, including which defenses to raise at trial and what witnesses to call, represent an attorney's decision regarding trial tactics which lie within the proper discretion of trial counsel and will not be reviewed later for competence." *State v. Voorhees,* 596 N.W.2d 241, 255 (Minn. 1999).

Similar analysis applies to appellate counsel's decision as to what claims to assert on appeal. *See Williams v. State,* 764 N.W.2d 21, 31 (Minn.2009) ("[A]ppellate counsel is not required to raise claims on direct appeal that counsel could have legitimately concluded would not prevail."); *Case v. State,* 364 N.W.2d 797, 800 (Minn. 1985) ("[C]ounsel has no duty to include claims which would detract from other more meritorious issues."). Reed argues that counsel's performance fell below an objective standard of reasonableness on seven occasions. All of Reed's allegations of ineffective assistance are without merit for the reasons set out below.

### Failure to raise statute-of-limitations defense

■■■■ Reed argues that trial and appellate counsel provided ineffective assistance of counsel by not raising a statute-of-limitations defense. We disagree.

The statute of limitations in effect at the time of the killing stated:

> Indictments for murder may be found at any time after the death of the person killed; in all other cases, indictments shall be found and filed in the proper court within three years after the commission of the offense; but the time during which the defendant shall not be an inhabitant of, or usually resident within, this state, shall not constitute any part of the limitation of three years.

Minn.Stat. § 628.26 (1974). In 2000, the legislature amended the statute substituting the phrase "any crime resulting in the death of the victim" for the word "murder." Act of Apr. 3, 2000, ch. 311, art. 4, § 9, 2000 Minn. Laws 185, 216. The amendment applied to crimes committed on or after August 1, 2000, or to crimes committed before August 1, 2000, if the limitation period had not yet expired.

Reed asserts that the 2000 amendment reflected a substantive change in the law and that the amendment implicitly supports a conclusion that before August 1, 2000, the "murder" exception to the three-year statute of limitations only applied to indictments alleging murder in the first, second, or third degree. Based on his assertion, Reed argues that the three-year statute of limitations plainly barred the indictment filed against him in 2005 be-

cause the indictment alleged charges of aiding and abetting murder and conspiracy arising out of the 1970 shooting death of Sackett, and therefore trial counsel's failure to raise a statute-of-limitations defense fell below an objective standard of reasonableness. The State argues the 2000 amendment did not reflect a substantive change and that the "murder" exception to the three-year statute of limitations has always applied to any crime resulting in the death of the victim.

We need not, and do not, decide whether the 2000 amendment reflects a substantive change, because for statute-of-limitations purposes, a charge of aiding and abetting first-degree murder is indistinguishable from a charge of first-degree murder. *See, e.g.*, Minn.Stat. § 609.05, subd. 1 ("A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."); *State v. Briggs*, 84 Minn. 357, 359–60, 87 N.W. 935, 936 (1901) (finding the distinction between principals and accessories before the fact "abolished" by statute and a defendant will be considered a principal regardless of whether he or she was charged as a principal or accessory); *see also* 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice–Criminal Law & Procedure* § 45.1 (3d ed.2001) ("The [aiding and abetting] statute merely provides a means by which a defendant may be charged with a substantive crime. There is no separate substantive crime of liability for the crime of another."). Under Minn.Stat. § 628.26 (1974), Reed's indictment for aiding and abetting murder is indistinguishable from an indictment for first-degree murder because the aiding-and-abetting statute does not create a separate crime. Instead, the aiding-and-abetting statute authorizes the State to prosecute a person who aids and abets another in committing a crime as if the person committed the crime in ques-

tion. Because Reed's indictment for aiding and abetting murder was equivalent to an indictment for first-degree murder, the aiding-and-abetting-murder indictment fell within the "murder" exception to the three-year statute of limitations. Therefore, counsel's failure to assert a statute-of-limitations defense to the aiding-and-abetting-murder charge did not constitute conduct that fell below an objective standard of reasonableness.

■ Unlike the aiding-and-abetting statute, the conspiracy statute, Minn.Stat. § 609.175, creates an independent offense. Consequently, the three-year statute of limitations would apply to the conspiracy charge if we interpreted Minn.Stat. § 628.26 (1974) to limit the "murder" exception to indictments alleging murder in the first, second, or third degree. But even if the three-year statute of limitations applied to the conspiracy charge, we conclude that trial counsel's failure to assert a statute-of-limitations defense to the conspiracy charge did not fall below an objective standard of reasonableness. As the U.S. Supreme Court recognized in *Spaziano*, 468 U.S. at 456, 104 S.Ct. 3154, waiving a statute-of-limitations claim to a lesser offense may be a valid trial strategy designed to avoid the risk of an unwarranted conviction when a jury is presented with the all-or-nothing choice between finding a defendant guilty of a single charge of murder and finding the defendant not guilty of any criminal offense. Even if counsel's failure to assert a statute-of-limitations defense to the conspiracy charge fell below an objective standard of reasonableness, there is no reasonable probability that, but for counsel's unprofessional errors, the ultimate outcome of the proceedings would have been different. The district court did not impose any punishment based on the conspiracy charge, and instead sentenced

Reed to life imprisonment based solely on the aiding-and-abetting conviction.

The record does not support Reed's claim that counsel's failure to assert a statute-of-limitations defense fell below an objective standard of reasonableness. Thus, we conclude the postconviction court did not abuse its discretion when it rejected the ineffective-assistance-of-counsel claims that were based on Reed's statute-of-limitations argument.

### Failure to consult

We previously concluded that "Reed's counsel visited Reed 22 times between March 2005 and February 2006," and that these visits undercut Reed's claim that he was not consulted in preparation for the defense. *Reed I*, 737 N.W.2d at 587–88. Reed does not explain how more consultation would have affected the outcome of the case. *See In re Commitment of Cox*, No. A08–910, 2009 WL 113397, at *5 (Minn.App. Jan. 20, 2009), *rev. denied* (Minn. Mar. 31, 2009) (finding no prejudice even if the attorney did not consult with the appellant). Thus, we conclude the postconviction court did not abuse its discretion when it rejected the ineffective-assistance-of-trial-counsel claim that was based on trial counsel's alleged failure to consult.

### Pressure to testify falsely

 Assuming, without deciding, that trial counsel pressured Reed to testify falsely, we note that Reed states he refused to do so. Therefore, this alleged deficiency, if it did occur, could not have affected the outcome of the case. *See Anderson v. State*, 746 N.W.2d 901, 907–08 (Minn.App.2008) (stating that advice to lie did not constitute ineffective assistance because, among other reasons, there was no prejudice). Consequently, we conclude the postconviction court did not abuse its discretion when it rejected the ineffective-assistance-of-trial-counsel claim that was based on trial counsel's alleged pressure on Reed to testify falsely.

### Failure to raise self-representation request and failure to appeal self-representation issue

 Assuming Reed told trial counsel of Reed's desire to represent himself and they did not bring this desire to the court's attention, Reed has not established that there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate outcome of the proceedings would have been different. As discussed above, the district court denied Reed's February 7, 2006, pro se motion, which Reed now claims raised an issue of self-representation. Reed also fails to identify what he would have done differently if he had represented himself or how the outcome would have changed. Additionally, appellate counsel could have reasonably read the record and concluded, as the postconviction court did, that Reed did not raise a self-representation issue. Thus, the postconviction court did not abuse its discretion when it rejected the ineffective-assistance-of-counsel claims that were based on Reed's self-representation arguments.

### Failure to request accomplice corroboration instruction

In reviewing the accomplice-corroboration-instruction issue for plain error in Reed's direct appeal, we concluded that Reed had not shown "a reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict." *Reed I*, 737 N.W.2d at 583 (internal quotation marks omitted). Because we have already concluded there is no prejudice under plain error, we also conclude there is no prejudice for purposes of ineffective assistance of counsel. *See State v. Rhodes*, 657 N.W.2d 823, 839 n. 7 (Minn. 2003) ("Because both the plain error and

ineffective assistance of counsel tests require a showing of prejudice, it is redundant to address this claim under plain error."). Thus, the postconviction court did not abuse its discretion when it rejected the ineffective-assistance-of-trial-counsel claim that was based on Reed's accomplice-corroboration-instruction argument.

*Failure to effectively confront and impeach witnesses with exculpatory evidence*

 Reed alleges a number of instances where trial counsel could have called witnesses and raised inconsistencies but did not. These are decisions regarding what evidence to present to a jury and are therefore subject to limited review under *Voorhees*, 596 N.W.2d at 255. Furthermore, none of the omissions were as crucial as those in the Eighth Circuit cases Reed cites. *See Hadley v. Groose*, 97 F.3d 1131, 1135–36 (8th Cir.1996); *Foster v. Lockhart*, 9 F.3d 722, 726–27 (8th Cir. 1993); *Chambers v. Armontrout*, 907 F.2d 825, 831–32 (8th Cir.1990). Reed argues that counsel should have impeached Trimble–Smith with various pieces of evidence, but because Trimble–Smith's testimony was both helpful and harmful to Reed, overly aggressive impeachment might not have been helpful to Reed. For example, although Trimble–Smith testified that Reed told her to make the call that lured Sackett to the location, she also testified that Reed was not involved in the plot and was not the shooter. Additionally, the State had already raised Trimble–Smith's drug issues and the inconsistencies in her testimony on direct exam.

Reed also argues that trial counsel should have impeached John Griffin regarding the date the alleged confession by Reed to Griffin took place, but the transcript shows the date was never clearly specified in the questioning. Reed argues that counsel should have impeached Anthony Foster with the fact that an individual Foster said was present during a conversation about the killing was actually in prison at the time of the conversation, but the individual's presence was a collateral detail of the testimony and potentially distracting to the jury. Thus, we conclude the postconviction court did not abuse its discretion when it rejected the ineffective-assistance-of-trial-counsel claim that was based on counsel's alleged failure to call witnesses and effectively cross-examine witnesses.

*Failure to raise ineffective assistance of trial counsel on appeal and failure to stay direct appeal pending postconviction relief proceeding*

 On appeal, appellate counsel was not obligated to raise ineffective-assistance-of-trial-counsel claims that appellate counsel could have legitimately concluded would not prevail. *See Williams*, 764 N.W.2d at 31 (explaining that "appellate counsel is not required to raise claims on direct appeal that counsel could have legitimately concluded would not prevail."); *Case*, 364 N.W.2d at 800 (stating that "counsel has no duty to include claims which would detract from other more meritorious issues."). Appellate counsel raised six issues on direct appeal, *Reed I*, 737 N.W.2d at 579, and could have concluded, as we have, that Reed's ineffective-assistance-of-trial-counsel claims lacked merit. Additionally, refusing to postpone direct appeal to pursue an ineffectiveness claim at a postconviction proceeding is a tactical decision that directly relates to counsel's decisions on what issues to appeal. Thus, we conclude the postconviction court did not abuse its discretion when it rejected Reed's ineffective-assistance-of-appellate-counsel claim based on counsel's refusal to raise an ineffective-assistance-of-trial-counsel claim.

## IV.

In his petition for postconviction relief, Reed sought a new trial based on Trimble–

Smith's recantation of her trial testimony. This issue was raised and rejected on direct appeal, *Reed I*, 737 N.W.2d at 590, but Reed now submits three additional affidavits-one each from Trimble–Smith, her grandson, and her brother, as well as her daughter's affidavit already considered on direct appeal—alleging Trimble–Smith recanted her testimony. The *Knaffla* bar was not addressed by the parties or the district court, and therefore we will proceed to the merits.

■ The *Larrison* test applies to claims based on recanted testimony. *Doppler v. State*, 771 N.W.2d 867, 872 (Minn. 2009) (applying *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928), *overruled by United States v. Mitrione*, 357 F.3d 712, 718 (7th Cir.2004)). When considering a recanted-testimony claim, "the post-conviction court should consider three factors: (1) whether the court is 'reasonably well-satisfied' that the trial testimony was false; (2) whether 'without that testimony the jury might have reached a different conclusion'; and (3) whether 'the petitioner was taken by surprise at trial or did not know of the falsity until after trial.' " *Id.* (quoting *Opsahl v. State*, 677 N.W.2d 414, 423 (Minn.2004)). We recently held that an allegation of recantation entitled the defendant to an evidentiary hearing because there was "sufficient indicia of trustworthiness" that the recantation was genuine. *Ferguson v. State*, 779 N.W.2d 555, 560 (Minn.2010). In *Ferguson*, we noted that the witness's affidavit gave "a reason for his change in testimony, which, if believed, could arguably support a finding that [the witness's] recantation was genuine." *Id.* The affidavit of the witness in *Ferguson* explicitly said that he had "lied" and detailed exactly what that lie was. *Id.* at 558.

We turn first to the daughter's affidavit. In Reed's direct appeal, we held the daughter's affidavit did "not satisfy any of

*Larrison's* three prongs." *Reed I*, 737 N.W.2d at 590. Reed offers no reason why we should reconsider our previous rejection of the affidavit and we are aware of none.

■ Second, the brother's affidavit states only that police officers gave him money to find Trimble–Smith, and that the police officers said that Trimble–Smith would receive reward money for her testimony. This affidavit does not establish that any testimony was false or recanted.

■ Third, the grandson's affidavit states that the police officers told Trimble–Smith she was allowed to change her story from the account she gave at her own trial, that the police gave the grandson and Trimble–Smith money, and that Trimble–Smith was "using crack for about 5 days." As with the brother's affidavit, this information arguably impairs credibility, but does not establish false testimony or recantation.

■ Finally, Trimble–Smith's affidavit states that she gave one story at her own trial, that the officers told her what to say and told her that she could change her story from the one she gave at her own trial, that she was high on crack when she made her more recent statement, and that she was promised reward money for her statement. Reed argues that there is only one logical conclusion from this affidavit, which is that Trimble–Smith lied during Reed's trial. The affidavit may very well cast some doubt on the credibility of Trimble–Smith but nowhere does it assert or even imply recantation, and it does not meet the level of specificity required to establish a recanted statement. *Compare Hooper v. State*, 680 N.W.2d 89, 94–95 (Minn.2004) (holding that nodding in approval and otherwise remaining silent when directly asked if his testimony was false did not meet the first prong of *Larri-*

*son* ), *with Ferguson*, 779 N.W.2d at 558, 560–61 (holding that the postconviction court should have held an evidentiary hearing to determine whether a recantation met the first prong of *Larrison* where a witness's affidavit said he lied at trial, specified the false information, and gave reasons for telling the lie at trial).

We agree with the postconviction court that none of the affidavits submitted by Reed meet the first two prongs of *Larrison*. Additionally, an evidentiary hearing to determine the credibility of the recantation under *Ferguson* is not proper because there has been no evidence of recantation provided. We conclude that the postconviction court did not abuse its discretion when it rejected Reed's recanted-testimony claim.

Affirmed

STRAS, J., took no part in consideration or decision of this case.

