*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1777**

State of Minnesota,
Respondent,

vs.

Wyatt Morris Howard,
Appellant.

**Filed September 19, 2016
Affirmed
Bratvold, Judge**

Hennepin County District Court
File No. 27-CR-14-6946

Lori M. Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant Wyatt Morris Howard challenges his conviction of conspiracy to commit

first-degree aggravated robbery, asserting that the district court erred in denying his motion

to suppress text-message evidence recovered from his cellphone pursuant to a search warrant. In his pro se brief, Howard argues that he was denied effective assistance of counsel. Because the district court judge had a substantial basis on which to find probable cause supporting issuance of the search warrant and because Howard is not entitled to a new trial on the grounds of ineffective assistance of counsel, we affirm.

## FACTS

Wyatt Morris Howard was arrested after R.P., an employee of the Richfield Best Buy Mobile store, grew suspicious of Howard and two companions and called the police. On March 11, 2014, R.P. sat in the store parking lot before beginning his shift and saw a red Nissan enter the parking lot, drive around, and exit the lot. None of the stores in the strip mall in which the Best Buy Mobile store was located had opened for the day. Around 2:30 p.m. on the same day, R.P. again saw the red Nissan. This time, it pulled into a parking spot in front of the store. At the time, one customer was inside the store. As soon as the customer left the store, three men got out of the red Nissan and entered the store. R.P. noticed that one of the three men "was walking around the outer perimeter" of the store and "walking into areas where mainly customers wouldn't go," "almost like they were checking the place out." The three men left the store after approximately 15 minutes without purchasing anything.

The next day, R.P. described his observations from the previous day to his boss. Then, R.P. again saw three men in the red Nissan pull into the Best Buy Mobile parking lot. He thought this seemed "fishy" and watched through a peephole in one of the store's fire doors to see if they would park. The three men parked in front of the store's fire door,

2

which was typically used only as an emergency exit and was out of sight of the front door. According to R.P., they "sat there for a while;" got out and then returned to the car at least once. R.P. thought that they could be the same three men who had entered the store the day before. R.P. called the Richfield police to report the men's behavior and his suspicion that they were "casing" the store.[1]

Responding to R.P.'s call, the Richfield police arrived and determined that a robbery may be imminent, and approached the red Nissan. Officer Peterson first spoke with C.H., a passenger. Peterson reported that C.H. appeared nervous, and C.H. told Peterson that the three men were in the parking lot "waiting for their rental car." Because Peterson had learned that the red Nissan was a rental car before he spoke to the men, Peterson found C.H.'s answer to be suspicious.

Peterson then spoke to Howard who was sitting in the driver's seat. Howard acknowledged that he had rented the car. After mentioning that police had received a suspicious-activity call and that this Best Buy Mobile store had been previously robbed, Peterson asked Howard for permission to search the car. Howard consented. The officers found several duffle bags, rubberized gloves, a deadbolt cutter, a hammer, duct tape, and ski masks. Upon recovering these items from the car, the officers arrested Howard, C.H., and the third man, F.R. Once they were detained, Peterson returned to the car and found a

---

[1] Officer Rogge testified during the trial that "casing" refers to a person's scouting of a potential burglary location, to "get the layout of the store, see where cameras are, see where employees are, see how many people are actually in the store at that time, just kind of get the physical layout of it."

3

CO2 BB gun, which closely resembled a handgun, under the driver's seat. When Howard was arrested, he was wearing a ski mask, folded up to look like a winter hat.

Richfield police towed the car to a secured garage, and Investigator Gifford applied for and received a search warrant to conduct a second search of the car. The search warrant application expressly sought the following items: handgun, real or replica; bolt cutter; ski masks; knit caps; hammer; gloves; duffle bag; duct tape; flashlights; pry bars; cellphones, "including all electronic data stored internally or externally;" and "[a]ny other items which may show constructive possession, including documentation, mailings, rental agreements, hotel receipts, credit cards and credit card receipts or any additional documents that may be discovered during the search."

Upon executing the warrant, Gifford found two cellphones, one of which was unlocked and appeared to belong to Howard. From Howard's cellphone, the investigators recovered a text-message conversation between Howard and a contact named "Cali" that Gifford summarized as "something to the extent that they were going to be taking some i-Phones from a Best Buy."

Shortly after his arrest, the state charged Howard with conspiracy to commit first-degree aggravated robbery, *see* Minn. Stat. § 609.245, subd. 1 (2014). In June 2015, Howard moved to suppress "all evidence obtained from the warrantless search of the electronic cellphone data" recovered from the search of the rental car. The district court denied the suppression motion before trial, and trial was held on July 6, 7 and 8, 2015. The jury convicted Howard, and he was later sentenced to 34 months. This appeal follows.

# DECISION

## I. Forfeiture of the Fourth-Amendment Issue

As a preliminary matter, the state asserts that Howard raises a new issue on appeal that he forfeited by failing to raise it before the district court. Generally, this court "will not decide issues [that] were not raised before the district court, including constitutional questions of criminal procedure." *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). "At the court's discretion, it may deviate from this rule when the interests of justice require consideration of such issues and doing so would not unfairly surprise a party to the appeal." *Id.*

On appeal, Howard contends that the search warrant was invalid because the supporting affidavit did not establish probable cause to believe that the cellphones would constitute or contain evidence of a crime. This issue is absent from Howard's written submission to the district court, which sought suppression based the allegation that the search warrant did not authorize the police to search the contents of the cellphones. At the omnibus hearing, Howard argued something similar to the issue he raises on appeal:

> [I]f somehow the Court finds persuasive this argument that [the language of the search warrant] allowed the warrant to act as a double warrant, if you will, where they could search the vehicle and the cellphone, that opens up a whole other world of whether the judge was even allowed to issue that kind of warrant and, moreover, if the facts to support probable cause were sufficient to allow that search of the cellphones.

We conclude this argument is sufficient to preserve the issue for appeal. Because his trial counsel raised the alternative issue to the district court, Howard is not precluded from asserting it on appeal.

## II.    Probable Cause for the Search Warrant

Turning to the merits of Howard's argument, he asserts that the affidavit supporting the search-warrant application did not establish probable cause to seize or search the cellphones because there was no nexus shown between either the cellphone or its contents and any criminal behavior. The state responds that the district court properly denied the motion and, even if the denial was improper, no prejudice to Howard resulted and no relief is warranted.

"When reviewing a district court's decision to issue a search warrant, [a reviewing court's] only consideration is whether the judge issuing the warrant had a substantial basis for concluding that probable cause existed." *State v. Jenkins*, 782 N.W.2d 211, 223 (Minn. 2010) (quotation omitted). This court "review[s] the district court's factual findings for clear error and the district court's legal determinations de novo." *Id*. "In doing so, we are to consider the totality of the circumstances and 'must be careful not to review each component of the affidavit in isolation.'" *Id.* (quoting *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985)). Unlike the probable-cause determination made in connection with a warrantless search—which we review de novo—we afford "great deference" to a district court's probable-cause determination made in connection with the issuance of a search warrant. *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001).

The standard for granting a search warrant is set forth in the Fourth Amendment to the United States Constitution, which guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." U.S. Const. amend. IV (emphasis added); *see also* Minn. Const. art. I, § 10.

The particularity requirement in the Fourth Amendment prevents a "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 2038-39 (1971), and "prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 76 (1927). "A particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561, 124 S. Ct. 1284, 1292 (2004) (quotation omitted). "[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement . . . is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5, 104 S. Ct. 3424, 3427 n.5 (1984).

When presented with a search warrant application, the issuing judge, must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). "Elements bearing on this probability determination include information establishing a nexus between the crime, objects to be seized and the place to be searched." *Jenkins*, 782 N.W.2d at 223 (citing *State v. Souto*, 578 N.W.2d 744, 747 (Minn. 1998) and 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.7(d) (4th ed. 2004)).

Applying these principles here, Howard's argument requires us to examine whether the issuing judge had a "substantial basis" on which to conclude that probable cause existed. *Rochefort*, 631 N.W.2d at 804. The search warrant here sought "cell phones, including all electronic data stored internally or externally" on the ground that they were "in the possession of a person with intent to use such property as a means of committing a crime." Investigator Gifford's affidavit summarized his investigatory experience in Richfield; the conditions leading to the suspicious-activity call, including a previous robbery at the Richfield Best Buy Mobile store and a history of robberies at similar stores in the area; the three men's behavior leading to the employee's suspicion; the items observed during the consensual search of the car, including the bolt cutter, hammer, gloves, duffle bags, duct tape, and the $CO_2$ handgun; the positive identification of the men by the employee as the three who appeared to have been casing the store the day before; and Gifford's belief that "due to the specific combinations of items, time of day and lack of reasonable explanation for the items that [Howard, C.H. and F.R.] intended to commit a robbery."

Howard argues that the affidavit makes "no mention of any fact that would support an honest suspicion that any cellphone found in the car would itself be evidence of a crime subject to seizure." In reviewing the issuing judge's decision, however, "we 'must be careful not to review each component of the affidavit in isolation. Even if each component is judged unsubstantial, the components viewed together may reveal an internal coherence that gives weight to the whole.'" *State v. Harris*, 589 N.W.2d 782, 788 (Minn. 1999) (quoting *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985)). Moreover, reviewing courts

8

may consider any reasonable inferences that arise from the facts stated in the supporting affidavit in assessing the existence of probable cause. *See, e.g.*, *Novak v. State*, 349 N.W.2d 830, 833 (Minn. 1984) (concluding that, "considering all the information contained in the affidavit and reasonable inferences therefrom," the issuing magistrate was justified in finding probable cause to search an established marijuana dealer's home for marijuana). Applying these principles here, the facts of the supporting affidavit strongly suggest that the three men were involved in planning a robbery of a cellphone retailer. Therefore, a reasonable inference can be drawn that the men had perhaps already committed a robbery of a cellphone retailer and that any resulting stolen cellphones could have been concealed in the car.

Howard next contends that the affidavit contained no mention that cellphones were seen in the car nor alleged any basis on which to suspect that the cellphones would contain evidence of a crime. He urges, "[u]nless there is at least *something* in the warrant application from which such an inference could be drawn in this case, such reasoning must be deemed insufficient to establish probable cause."

Howard correctly observes that the affidavit mentions neither the use of cellphones nor visibility of cellphones inside the car, but he overlooks the reasonable inferences that can be drawn. The affidavit describes the officers' perceptions indicating an imminent robbery. The search-warrant application states that the affiant sought the "cellphones, including electronic data stored internally or externally," on the ground that they were "in the possession of a person with intent to use such property as a means of committing a crime." *See Harris*, 589 N.W.2d at 788 (noting that the factors the issuing judge may

9

consider include the type of crime and the nature of the items sought). From the affidavit and the search-warrant application, a reasonable inference may be drawn that the three men were using their personal cellphones to communicate among themselves and with others regarding the details of the crime.

Consistent with this reasoning, the Minnesota Supreme Court upheld a search warrant based on an inference that two caregivers of a child will exchange written communications, thus establishing probable cause that correspondence is present, despite the affidavit's failure to mention correspondence. *State v. McBride*, 666 N.W.2d 351, 362 (Minn. 2003) (upholding denial of appellant's motion to suppress notebook seized pursuant to a search warrant explicitly seeking books and first aid manuals). Given this court's "great deference" to the issuing judge, *Rochefort*, 631 N.W.2d at 804, we conclude that a substantial basis existed on which to find probable cause to support the issuance of a warrant for the cellphones and their contents. Accordingly, the district court properly denied Howard's suppression motion.

## III.    Ineffective-Assistance-of-Counsel Claim

Howard argues in his pro se supplemental brief that he was deprived of effective assistance of counsel. To establish ineffective assistance of counsel, Howard must show both that: (1) his trial attorney's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for his attorney's errors, the outcome of the trial would have been different. *Williams v. State*, 764 N.W.2d 21, 29–30 (Minn. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984)). Minnesota courts define the objective standard as "representation by an

10

attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993) (quotation omitted). In considering the second prong of the *Strickland* test, "[t]he reviewing court considers the totality of the evidence before the judge or jury." *Anderson v. State*, 830 N.W.2d 1, 10 (Minn. 2013).

Howard first contends that his attorney was "ill-prepared and completely unknowledgeable about [his] case," yet the record does not support his contention. Howard's trial counsel made a suppression motion before trial and formulated a detailed theory of the case, which he presented in opening statements, throughout trial, and in closing arguments. Next, Howard claims that he was not made aware of a favorable plea-deal offer, but the pretrial hearing transcript reflects that the prosecutor reiterated the state's plea offer of a 21-month commitment to run concurrent with Howard's preexisting federal sentence. Additionally, contrary to Howard's assertion that he was not aware that co-defendant Christopher Hall would testify at trial, the parties discussed impeaching Hall with a prior conviction at the pretrial proceeding, at which Howard was present. The record therefore belies these assertions of ineffective assistance of counsel.

Howard additionally alleges that his counsel's request for Howard's input during cross-examination and his counsel's failure to meet with him over breaks during trial constituted ineffective assistance. These decisions by counsel, however, are matters of trial strategy, *Reed v. State*, 793 N.W.2d 725, 736 (Minn. 2010), which this court is generally reluctant to review for ineffective assistance because of the public policy concern of "allowing counsel to have the flexibility to represent a client to the fullest extent possible."

11

*Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004) (quotation omitted). To preserve an attorney's flexibility to represent a client to the fullest extent possible, we decline to review these instances of alleged ineffective assistance. *Id.*

Finally, Howard asserts that his attorney's failure to provide him with discovery materials until three days before trial amounted to ineffective assistance of counsel. Because Howard has not stated how he was prejudiced by his attorney's delay in providing him with discovery materials nor how the outcome would have been different had his attorney given the materials to him earlier, he has not established the second prong of the *Strickland* test. *See Williams*, 764 N.W.2d at 30 (concluding that appellant could not establish the prejudice prong). To the contrary, that Howard's attorney asked for his input before and during trial belies Howard's implicit argument that he did not have the opportunity to contribute to the defense theory of the case. Without specifically alleging prejudice, Howard's assertions are merely speculation, which is insufficient to establish prejudice. *Rhodes*, 657 N.W.2d at 844.

Following *Strickland's* admonition that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged," Howard was not deprived of his constitutional right to effective representation. *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2052; *see Rhodes*, 657 N.W.2d at 845 (applying *Strickland* to conclude that appellant was not deprived of effective assistance of counsel). Because the record does not support many of Howard's claims, we decline to review his counsel's trial tactics. Also because Howard fails to establish how he was prejudiced by the remaining instances of

alleged ineffective assistance, we need not address the performance prong. *Rhodes,* 657 N.W.2d at 842. We therefore conclude that Howard is not entitled to relief on this ground.

**Affirmed.**