# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1177

State of Minnesota,
Respondent,

vs.

Armando DeLaCruz, Jr.,
Appellant.

**Filed August 1, 2016**
**Reversed and remanded**
**Bratvold, Judge**

Waseca County District Court
File No. 81-CR-13-771

Lori M. Swanson, Attorney General, St. Paul, Minnesota; and

Brenda Miller, Waseca County Attorney, Alex Saumer, Assistant County Attorney, Waseca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

## S Y L L A B U S

I.     The requirement of Minn. R. Crim. P. 26.04, subd. 1(3), that a defendant serve a new-trial motion within 15 days after a verdict or finding of guilty is a claim-processing rule, which is a procedural tool and not a jurisdictional requirement. Thus a district court has jurisdiction over a new-trial motion served more than 15 days after a verdict or finding of guilty.

II.     The district court has discretion to consider an amended new-trial motion where the defendant also served a timely new-trial motion and then served an amended new-trial motion after the 15-day deadline in rule 26.04, subdivision 1(3), raising grounds not raised in the first motion.

III.    In considering an amended new-trial motion, a district court should determine the amended motion on the merits when (a) the moving party has served a timely new-trial motion under rule 26.04, subdivision 1(3); and (b) the moving party has established satisfactory reasons for raising new grounds in the amended new-trial motion.

**O P I N I O N**

**BRATVOLD**, Judge

Appellant, Armando DeLaCruz, Jr., appeals from his convictions of 20 offenses, arguing that the district court abused its discretion in denying his amended new-trial motion, which asserted that the state committed a *Brady* violation by failing to disclose critical impeachment evidence regarding the complaining witness. We hold that the district court erred by concluding it lacked discretion to consider appellant's amended new-trial motion. First, we reject the state's claim that the district court lacked jurisdiction over the amended new-trial motion. Second, we conclude the district court abused its discretion by failing to decide the merits of the amended new-trial motion because appellant's first new-trial motion was timely served and appellant offered satisfactory reasons for asserting new

2

grounds in the amended motion. We reverse and remand for a hearing on the merits of the amended new-trial motion.

**FACTS**

This appeal arises from Armando DeLaCruz, Jr.'s convictions of first-degree burglary, kidnapping, false imprisonment, terroristic threats, first-degree criminal sexual conduct, second-degree criminal sexual conduct, and fifth-degree assault. In the late evening of September 13, 2013, C.O. was at home with two of her four children. Once her children were asleep, C.O. heard noises in the house, opened her bedroom door, and saw a man in the hallway wearing her son's pajamas over his head. C.O. later identified the man to police as DeLaCruz.

C.O. attempted to lock herself in her bedroom, but DeLaCruz prevented her from shutting the door and forced his way into the room. He began to wrestle with her and, at one point, choked her. To defend herself, C.O. twice bit DeLaCruz's arms. DeLaCruz instructed C.O. to remove her clothing and threatened to harm her children if she did not comply. C.O. removed her clothing, which DeLaCruz used to bind her: he blindfolded her, bound her arms behind her back, and bound her feet. Once she was bound, DeLaCruz touched C.O.'s breasts and buttocks. DeLaCruz forcefully penetrated C.O.'s vagina three separate times, causing pain. During the assault, C.O. was able to see DeLaCruz's face and recognized him.

At some point, C.O. escaped and fled to a neighbor's home with her two children. The neighbor later testified that C.O. pounded on the door, "screaming at the top of her lungs" and frantically reported that she had just been raped. According to the neighbor's

3

account, C.O. was naked except for a small bath towel. Once the police arrived at the neighbor's home, they transported C.O. to a nearby hospital, where she underwent a sexual-assault examination. A pelvic exam revealed that C.O.'s vagina was reddened.

Police officers investigated C.O.'s home and determined that DeLaCruz had entered through an unlocked window. The officers found C.O.'s shirt knotted on the floor of her bedroom and saw that her pants were turned inside out on the floor, intertwined with her underwear.

Police officers arrested DeLaCruz on September 14. When the police detained him, DeLaCruz had scratches on his nose, a bite mark on his left forearm, a bloody scrape on his wrist, a mark on his right forearm, and a scratch on his right elbow. The officers concluded that his injuries were consistent with C.O.'s description of her attempts to defend herself.

The Waseca County Attorney's office later charged DeLaCruz with 30 offenses: four counts of first-degree burglary, *see* Minn. Stat. § 609.582, subd. 1(a), (c) (2012); one count of kidnapping, *see* Minn. Stat. § 609.25, subd. 1 (2) (2012); one count of false imprisonment, *see* Minn. Stat. § 609.255, subd. 2 (2012); two counts of terroristic threats, *see* Minn. Stat. § 609.713, subd. 1 (2012); ten counts of first-degree criminal sexual conduct, *see* Minn. Stat. § 609.342, subd. 1 (c), (e)(i) (2012); eleven counts of second-degree criminal sexual conduct, *see* Minn. Stat. § 609.343, subd. 1 (c), (e)(i) (2012); and one count of fifth-degree assault, *see* Minn. Stat. § 609.224, subd. 1(1) (2012). The state later dismissed two first-degree burglary charges, ultimately trying DeLaCruz for 28 offenses.

4

The district court held a jury trial from October 6 to October 14, 2014, at which numerous witnesses testified for the state and the defense. The jury deliberated for over two days. On October 17, the jury found DeLaCruz guilty of 20 counts (including two counts of first-degree burglary and six counts of first-degree criminal sexual conduct) and not guilty of eight counts.

Following the verdict, DeLaCruz made a series of motions. DeLaCruz, through counsel, orally moved for a judgment of acquittal. Then, acting pro se on October 20, DeLaCruz served a motion and supporting memorandum that alleged ineffective assistance of counsel, which the district court took under advisement. On October 22, the district court issued a written order, stating that DeLaCruz's motion would be "reserved and addressed at the sentencing hearing as part of [his] right to allocution."

Next, on October 29, DeLaCruz served a pro se motion for a new trial, which raised several grounds: the interests of justice required a new trial because of ineffective assistance of counsel, an "order of discretion" deprived DeLaCruz of a fair trial, prosecutorial and jury misconduct occurred, and the guilty verdict was not justified by the evidence.

At a November 10 "informational" hearing, the trial judge addressed some of these motions. First, he announced the denial of DeLaCruz's motion for a judgment of acquittal, stating a written order and supporting memorandum would be filed. Second, he reiterated that DeLaCruz's pro se motions would be "addressed by the court at sentencing as part of his right to allocution."

Third, the trial judge told the parties that, immediately before the jury returned its verdict, he received a court file that contained a police report indicating that C.O. made unsubstantiated allegations of sexual assault against a police officer in the course of a 2006 misdemeanor arrest.[1] We rely on the district court's summary of the police report because it was never made part of the trial court record. *See* Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."). According to the district court, the police report stated that C.O. accused the arresting officer of raping her, claimed that he had "touched her punanny," and screamed that the officer was "going down for touching her p-ssy." The arresting officer denied C.O.'s claim. No charges resulted from C.O.'s allegations.

On November 20, ten days after the district court revealed C.O.'s prior false sexual-assault allegations and more than 30 days after the verdict, DeLaCruz again moved for a new trial, this time through counsel. After a December 11 hearing to address the new-trial motion, the trial judge recused himself and the case was reassigned. The newly assigned judge heard arguments on the new-trial motion on January 29, 2015.

At the January hearing, DeLaCruz argued that the state committed a *Brady* violation by failing to disclose the police report underlying C.O.'s 2006 arrest. The defense argued that the Waseca County Attorney's office prosecuted C.O. for the 2006 misdemeanor offenses. Although the state disclosed C.O.'s 2006 conviction to the defense in the course

---

[1] At a subsequent hearing, the parties learned that the information came to light through court administration's routine review of old files.

6

of pretrial discovery, it did not disclose the police report pertaining to C.O.'s allegations against the officer.

The state countered that DeLaCruz's November 20 new-trial motion was untimely because he served it more than 15 days after the jury issued its verdict, *see* Minn. R. Crim. P. 26.04, subd. 1(3), and no exception applied to allow the court to consider the motion on its merits. Alternatively, the state argued that no *Brady* violation had occurred because it did not have the 2006 police report and had no duty to investigate.

The newly assigned judge denied DeLaCruz's new-trial motion as time-barred and refused to consider it on the merits. In a footnote, the district court noted it had informed DeLaCruz that his pro se motions would be addressed at sentencing as part of his right of allocation. DeLaCruz was later sentenced for the convicted offenses. This appeal follows.

## ISSUE

Did the district court abuse its discretion by denying DeLaCruz's amended new-trial motion as time-barred?

## ANALYSIS

On appeal, DeLaCruz raises one issue: whether the district court erred by refusing to grant a new trial based on the alleged *Brady* violation.[2] The state responds that the district court did not err because DeLaCruz's November 20 new-trial motion was untimely. The

---

[2] In denying appellant's motion, the trial court noted that nothing precluded DeLaCruz from raising the same issue in a postconviction petition. We agree. We also agree with the trial court that it is "more efficient to deal with [the issue] now." We note that, although postconviction relief may be available to appellant, a new-trial motion is appropriate in this case because the issue arose after the jury verdict and before sentencing. In any event, DeLaCruz has not filed a postconviction petition at this time.

7

state also asserts, "[i]t appears that when a motion for a new trial is filed after the 15-day window in these unique post-verdict but pre-sentencing situations that district courts lack jurisdiction to hear such motions."

This case requires us to apply the Minnesota Rules of Criminal Procedure, the interpretation of which presents a question of law subject to de novo review. *See Ford v. State*, 690 N.W.2d 706, 712 (Minn. 2005). Also, the state raises a jurisdictional challenge. "Questions concerning the authority and jurisdiction of the lower courts are legal issues," which we also review de novo. *State v. Pflepsen*, 590 N.W.2d 759, 763 (Minn. 1999). Ultimately, we review the denial of a new-trial motion for an abuse of discretion. *State v. Green*, 747 N.W.2d 912, 917 (Minn. 2008).

### A.  *Deadline for New-Trial Motion*

Under the Minnesota Rules of Criminal Procedure, the district court may grant a new trial on the defendant's motion based on any of seven grounds.[3] Minn. R. Crim. P. 26.04, subd. 1(1). A new-trial motion "must be based on the record" and a party may submit, by affidavit or a sworn statement, pertinent facts that are not in the record. *Id.* The

---

[3]  We recognize that new-trial motions are not common in criminal cases. "Although a motion for a new trial or other post-verdict relief was once necessary to preserve an issue for appeal, this is no longer the case in criminal matters." 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice* § 35.1 (4th ed. 2012). "Many post-verdict motions have in practice been abandoned since adoption of the postconviction remedy procedures, and particularly issues once commonly raised in a motion for a new trial." *Id.*, § 35.2. We note, however, that the new-trial motion still serves an important purpose: "[i]t is often possible to place an earlier error in its full context when the trial is completed, or to show connections among a variety of errors which may have affected the result. The trial judge is more familiar with all aspects of the proceeding than an appellate court will be . . . ." *Id.*, § 35.1.

8

rule also provides a deadline: "[n]otice of a motion for a new trial must be served within 15 days after a verdict or finding of guilty. The motion must be heard within 30 days after the verdict or finding of guilty, unless the time for hearing is extended by the court for good cause within the 30-day period." *Id.*, subd. 1(3).

The rules of criminal procedure do not permit the district court to extend the deadline for serving a new-trial motion. Minn. R. Crim. P. 34.02. Rule 34.02 allows the district court to extend some deadlines but specifically excludes the deadline for a defendant's new-trial motion. *Id.* The rules of criminal procedure do not address amended posttrial motions.

Applying these rules to the posttrial submissions in this case, once the jury rendered its verdict on October 17, DeLaCruz had until November 3 to serve a new-trial motion. *See* Minn. R. Crim. P. 26.04, subd. 1(3); Minn. R. Crim. P. 34.01 (establishing rules for computation of new-trial-motion deadlines). As already discussed, DeLaCruz served a pro se new-trial motion on October 29, learned of the 2006 police report on November 10, and served an amended new-trial motion on November 20, raising the 2006 police report and alleging a *Brady* violation.

### B. District Court Jurisdiction Over Untimely or Successive New-Trial Motions

Because the state argues that the district court lacked jurisdiction over DeLaCruz's amended new-trial motion, the first issue is whether the deadline in rule 26.04, subdivision 1(3), is properly deemed jurisdictional or, instead, a claim-processing rule. To support its position, the state cites *State v. Barnes*, in which the Minnesota Supreme Court dismissed

9

an appeal taken from an order denying a new-trial motion filed after the 15-day time limit. 249 Minn. 301, 305, 81 N.W.2d 864, 866-67 (1957). The supreme court held, "the trial court was without jurisdiction to entertain the motion and its order thereon is a nullity and provides no basis for an appeal." *Id.* at 305, 81 N.W.2d at 867.

More recently, however, the Minnesota Supreme Court has held that "[t]here is 'a critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule.'" *Reed v. State*, 793 N.W.2d 725, 731 (Minn. 2010) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 456, 124 S. Ct. 906, 916 (2004)); *see also In re Civil Commitment of Giem*, 742 N.W.2d 422, 427 (Minn. 2007) ("[T]here is a fundamental difference between finding that a deadline is mandatory and concluding that it operates to take away the district court's authority to act."). Subject-matter jurisdiction "relate[s] to the court's statutory or constitutional *power* to adjudicate the case."[4] *Reed*, 793 N.W.2d at 731 (quotation omitted). Subject-matter jurisdiction "can never be forfeited or waived."[5] *Id.* (quotation omitted). In contrast, deadlines in claim-processing rules "may be unalterable on a party's application but can nonetheless be forfeited if the party asserting

---

[4]  For example, the Supreme Court addressed whether a federal court of appeals had jurisdiction to entertain *an appeal* filed outside the 14-day extension window allowed by 28 U.S.C. § 2107(a) in *Bowles v. Russell*, 551 U.S. 205, 207-09, 127 S. Ct. 2360, 2362-63 (2007). The Court held that "[b]ecause Congress specifically limited the amount of time by which district courts can extend the notice-of-appeal period in §2107(c), that limitation is more than a simple 'claim-processing rule,'" and concluded that Bowles's failure to file his notice of appeal according to the applicable statute deprived the lower court of jurisdiction. *Id.* at 213, 127 S. Ct. at 2366.

[5]  Waiver and forfeiture are not interchangeable terms. "Waiver is the intentional relinquishment . . . of a known right." *State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015) (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993)). Forfeiture is a "failure to make a timely assertion of a right." *Id.*

10

the rule waits too long to raise the point." *Eberhart v. United States*, 546 U.S. 12, 15, 126 S. Ct. 403, 404 (2005) (quotation omitted).

More specifically, in *Eberhart*, the Supreme Court of the United States held that the then-existing seven-day filing deadline for new-trial motions under Fed. R. Crim. P. 33 (b)(2) was an inflexible claim-processing rule and could therefore be forfeited. *Id.* at 19, 126 S. Ct. at 407; *see* Fed. R. Crim. P. 33 (b)(2) (providing that defendants now have 14 days from the verdict or finding of guilty to file a new-trial motion following 2009 amendment). It noted that, while claim-processing rules "assure relief to a party properly raising them," they "do not compel the same result if the party forfeits them." *Id. Eberhart* decreed that "[c]larity would be facilitated . . . if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* at 16, 126 S.Ct. at 405 (quotations omitted).

Minnesota has followed *Eberhart*. First, the Minnesota Supreme Court has recognized that our caselaw showed a "lack of clarity in distinguishing procedural tools from jurisdictional limits." *Giem*, 742 N.W.2d at 427.[6] Second, the supreme court has held that *Eberhart* correctly lays out the distinction between jurisdictional and claim-processing rules. *See, e.g., Reed*, 793 N.W.2d at 731 (holding that a criminal statute of limitations was "a claim-processing rule, and not a jurisdictional rule") (citing *Eberhart*, 546 U.S. at 15, 19, 126 S. Ct 403, 405); *Giem*, 742 N.W.2d at 427 n.6, 429 (construing statutory deadlines

---

[6] *State v. Barnes* appears to be one example of this lack of clarity.

11

as "not operating to limit the subject-matter jurisdiction of the district court") (citing *Eberhart*, 546 U.S. at 16, 126 S. Ct at 403); *Rubey v. Vannett*, 714 N.W.2d 417, 422 (Minn. 2006) (concluding that the 60-day time limit for hearing new-trial and amended-findings motions "is a procedural tool and does not divest the district court of jurisdiction" (citing *Eberhart*, 546 U.S. at 15, 126 S. Ct at 405).

Although the Minnesota Supreme Court has not expressly applied *Eberhart* to the 15-day new-trial-motion deadline, in *Green*, the court held that the state forfeited the right to object to the untimeliness of the defendant's new-trial motion by failing to raise the issue at the district court. 747 N.W.2d at 918. As explained above, a jurisdictional deadline cannot be forfeited; thus, *Green* implies the new-trial deadline is a claim-processing rule and not a jurisdictional rule.[7]

Following the Minnesota Supreme Court's line of cases that distinguish between claim-processing and jurisdictional deadlines, we hold that the 15-day deadline for new-trial motions in rule 26.04, subdivision 1(3), does not "deprive[] a court of its power to adjudicate the case." *See Reed*, 793 N.W.2d at 731. Rule 26.04, subdivision 1(3), like its federal counterpart, is a claim-processing rule. Thus, the expiration of the 15-day deadline

---

[7] Also, Minnesota's rules on new-trial motions are very similar to the federal rules on new-trial motions. *Compare* Fed. R. Crim. P. 33(b) (allowing defendant 14 days in which to file a new-trial motion on grounds other than newly discovered evidence), *with* Minn. R. Crim. P. 26.04, subd. 1(3) (allowing defendant 15 days in which to serve a new-trial motion). When our rules are "modeled after the federal rules, federal cases interpreting the federal rule are helpful and instructive but not necessarily controlling on how we will interpret our state counterpart." *Johnson v. Soo Line R.R.*, 463 N.W.2d 894, 899 n.7 (Minn. 1990). Even if we were to forgo considering *Green*, we would nonetheless follow *Eberhart* because its analysis has been embraced by the Minnesota Supreme Court in similar contexts.

for new-trial motions did not divest the district court of jurisdiction to hear appellant's amended new-trial motion.

### C. District Court's Discretion to Hear DeLaCruz's November 20 New-Trial Motion

Having concluded that the district court retained jurisdiction over the amended new-trial motion, the second issue is whether the district court had discretion to consider the amended new-trial motion. The district court decided that the amended motion was time-barred. The district court stated: "this Court is not persuaded that it has discretion to ignore Rule 26.04, subd. 1(3), which plainly requires a motion for a new trial to be made within 15 days of a verdict or finding of guilty." It supported its conclusion by referring to rule 34.02, "which explicitly prohibits the extension of the deadline for a motion for a new trial under Rule 26.04, subd. 1(3)."

The Supreme Court of the United States has referred to claim-processing rules as "inflexible." *Eberhart*, 546 U.S. at 14, 126 S. Ct. at 404. *Kontrick* interpreted bankruptcy procedural rules and explained that claim-processing rules may serve as "an affirmative defense" to an untimely filing. 540 U.S. at 456, 124 S. Ct. at 916. The Court has also stated that "district courts must observe the clear limits of the Rules of Criminal Procedure when they are properly invoked," *Eberhart*, 546 U.S. at 17, 126 S. Ct. at 406, and has deemed the district court's duty to dismiss "mandatory" when the prosecution properly objects to a motion's timeliness. *Id.* at 18, 126 S.Ct. at 406 (discussing *United States v. Robinson*, 361 U.S. 220, 80 S. Ct. 282 (1960)).

Here, the state objected to appellant's amended new-trial motion as untimely, because it was served outside the 15-day window. When the district court inquired whether the state would waive its timeliness objection, the state refused. In this case, the state neither waived nor forfeited the 15-day claim-processing deadline.

Next, the state argues that, absent waiver or forfeiture, the district court lacked discretion to consider appellant's amended motion because the district court cannot extend the time to serve new-trial motions under rule 34.02. The state's argument is flawed, however, because DeLaCruz served a *timely* new-trial motion on October 29 and provided satisfactory reasons for raising the *Brady* violation in the amended motion. Based on our review of the rules of criminal procedure and relevant Minnesota caselaw, appellant need not have secured an extension of the 15-day deadline.

First, the Minnesota Rules of Criminal Procedure do not address amended new-trial motions. But because Minn. R. Crim. P. 26.04, subd. 1(3), is based on Minn. R. Civ. P. 59.03, caselaw interpreting Minn. R. Civ. P. 59.03 may guide our interpretation. *See* Minn. R. Crim. P. 26.04 cmt. (West 1975); *see, e.g.*, *State v. Hugger*, 640 N.W.2d 619, 622 n.4 (Minn. 2002) (noting that, although identical civil rules were not before the court, "the interpretation and underlying reasoning [the court] articulate[d]. . . are equally applicable in the civil procedure context").

Second, relevant caselaw applying the civil new-trial rules instructs that a district court may consider an amended new-trial motion served after the expiration of the deadline where the moving party has previously served a timely new-trial motion and "satisfactory reasons" appear for the new grounds raised in the amended motion. *Application of Mitchell*,

14

216 Minn. 368, 373, 13 N.W.2d 20, 23 (1944); *see also Trickel v. Calvin*, 230 Minn. 322-23, 326, 41 N.W.2d 426, 428 (1950) (holding that a second new-trial motion "may be made when it is based on grounds not included in the first one *and satisfactory reasons appear for the omission*").

In *Mitchell*, the supreme court permitted an appeal from an order denying a second new-trial motion that was served four years after the first new-trial motion. 216 Minn. at 373, 13 N.W.2d at 23. The court concluded that the second motion was proper because it was based in part on new grounds that were "nonexistent at the time the first motion was made [and] could not have been asserted or decided at that time." *Id.*; *see Mjos v. Vill. of Howard Lake*, 287 Minn. 427, 435 n.6, 178 N.W.2d 862, 868 n.6 (1970) (stating that "to allow a party to make a second motion . . . for a new trial following denial of his first motion for such relief" is within the district court's discretion and "granting of the second motion is not an abuse of discretion, especially where the second motion is based upon grounds brought to the court's attention after denial of the first motion" (citing *Mitchell*, 216 Minn. at 373, 13 N.W.2d at 23)); *see generally Wilson v. Mitchell*, 349 N.W.2d 586, 588 (Minn. App. 1984) (applying *Trickel* and holding the appellant's second motion to vacate was appealable).

Under the rule announced in *Mitchell*, the district court in this case had discretion to consider DeLaCruz's amended new-trial motion. First, the state does not challenge the timeliness of appellant's first new-trial motion. Second, as *Mitchell* requires, DeLaCruz has established satisfactory reasons for raising new grounds in the amended new-trial motion. Under circumstances similar to those arising in this case, the Minnesota Supreme

15

Court has noted that a claim-processing deadline may be excused when the untimeliness was caused by "the actions of the court or court employees." *Rubey v. Vannett*, 714 N.W.2d 417, 422 (Minn. 2006) (citing *Am. Standard Ins. Co. v. Le*, 551 N.W.2d 923, 925–26 (Minn. 1996)).[8] Applying *Rubey* here, DeLaCruz has established a satisfactory reason for raising the alleged *Brady* violation in his amended new-trial motion. While the district court had the 2006 police report on the day the verdict was returned, it did not disclose the report to the parties until after the 15-day deadline for new-trial motions had passed. DeLaCruz has thus offered "satisfactory reasons" for the omission of the *Brady* violation from his first new-trial motion. *See also Mitchell*, 216 Minn. at 373, 13 N.W.2d at 23 (permitting second new-trial motion on grounds that were "nonexistent" at the time of the first new-trial motion).

Because DeLaCruz served a timely new-trial motion and offered satisfactory reasons for raising new grounds in an amended new-trial motion, we hold that the district court abused its discretion in denying the amended new-trial motion as time-barred. When a district court possesses discretion but fails to exercise it, Minnesota courts have held that the district court has abused its discretion. *State v. Curtiss*, 353 N.W.2d 262, 264 (Minn. 1984) (holding that the district court abused its discretion by failing to consider factors for a sentencing departure); *State v. Mendoza*, 638 N.W.2d 480, 484 (Minn. App. 2002) ("This

---

[8] While Westlaw states that *Le* has been "abrogated," *Rubey* does not expressly criticize or overrule the decision to excuse the deadline; rather, *Rubey* notes that *Le*, along with other decisions, relied on "confusing" caselaw that deemed new-trial deadlines to be "jurisdictional." 714 N.W.2d at 421. Moreover, *Rubey* appears to otherwise favorably cite *Le*. *Id.* at 422.

16

is not that 'rare' case in which we interfere with the district court's exercise of its discretion, but one in which, we conclude, that such an exercise of discretion may not have occurred."). We therefore remand for a hearing on the merits of the amended new-trial motion. *See Curtiss*, 353 N.W.2d at 264 (remanding for sentencing hearing).

### D.    DeLaCruz's Pro Se Arguments

In his pro se brief, DeLaCruz additionally raises several arguments that he asserts entitle him to a new trial.

#### 1.    *Ineffective Assistance of Counsel*

He first maintains that he was denied effective assistance of counsel because his two trial attorneys conducted an inadequate pretrial investigation, referred to him as a "so-called rapist" in closing arguments, and failed to submit written arguments in support of his motion for a judgment of acquittal. The extent of an attorney's investigation, choice of statements during closing arguments, and decision whether to submit written motion arguments are matters of trial strategy, which this court generally will not review. *Sanchez-Diaz v. State*, 758 N.W.2d 843, 848 (Minn. 2008) (noting that statements during closing arguments are a matter of trial strategy); *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004) (noting that the extent of investigation is a strategic matter and stating that appellate courts' "reluctance to scrutinize trial tactics is grounded in the public policy of allowing counsel to have the flexibility to represent a client to the fullest extent possible"(quotation omitted)); *State v. Tiessen*, 354 N.W.2d 473, 477 (Minn. App. 1984) (concluding that the defendant was not denied effective assistance by the failure to submit a written

17

memorandum in support of suppression motion where attorney made an oral argument), *review denied* (Minn. Nov. 7, 1984).

Nonetheless, we have considered DeLaCruz's arguments and conclude that they are not supported by the record, which shows that he was well represented. DeLaCruz has failed to show that his representation fell below an objective standard of reasonableness, as is required to succeed on an ineffective-assistance-of-counsel claim. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064 (1984).

### 2. *Prosecutorial Misconduct*

DeLaCruz next appears to argue that the state committed acts of prosecutorial misconduct, contending that the state failed to obtain video footage relevant to his defense and improperly used familiar terms such as "we" and "us" during closing arguments. He raises no legal authority or facts to support his contention that the state had a duty to discover the video footage to which he refers, thus we do not consider this issue. *See State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003) (refusing to consider portions of appellant's argument that were not supported by legal authority or facts in the record). Moreover, his claim that the prosecutor used improper terms in closing arguments finds no support in the record. Therefore, his prosecutorial-misconduct argument must fail.

### 3. *Irregularity in the Proceedings, Order, or Abuse of Discretion That Deprived the Defendant of a Fair Trial*

DeLaCruz claims that he was prejudiced when several jurors saw him escorted into the courtroom by two uniformed officers in hand restraints on two separate occasions, and

that he therefore should have been granted a mistrial.[9] The supreme court rejected a similar challenge in *State v. Hull*, 788 N.W.2d 91, 105-06 (Minn. 2010) (distinguishing the use of restraints inside the courtroom from the use of restraints during transport to or from the courtroom, which "is likely to be seen for just what it is—standard law enforcement practice" (quotation omitted)). Having reviewed the record, we conclude that the district court took reasonable steps to minimize the jury's view of DeLaCruz in handcuffs and he was not prejudiced by the jurors' fleeting observation of him being escorted into the courtroom. *See State v. Eling*, 355 N.W.2d 286, 292 (Minn. 1984) (holding that defendant was not denied his right to a fair trial where the trial court took reasonable steps to minimize the jury's view of defendant in handcuffs). Accordingly, he was not entitled to a mistrial on this ground.

Additionally, DeLaCruz asserts that the district court improperly seated a juror who was familiar with the lead prosecutor. DeLaCruz's trial counsel questioned this juror, explored potential bias, and later expressly passed the panel for cause. Thus, DeLaCruz essentially argues that the district court erred by failing to *sua sponte* strike a juror. This court has recently held that it "will not consider whether a district court erred by not striking a juror for cause *sua sponte* if the appellant expressly waived the right to challenge the juror for cause." *State v. Geleneau*, 873 N.W.2d 373, 376 (Minn. App. 2015), *review denied* (Minn. Mar. 29, 2016). Therefore, we decline to address this argument.

---

[9]  In his October 29 new-trial motion, DeLaCruz concedes that he was casually dressed for trial and his handcuffs were not visible.

19

DeLaCruz also seems to assert that the district court abused its discretion in failing to grant his motion for a change of venue. DeLaCruz cites no facts in the record establishing his claim that pretrial publicity of the case "highly prejudiced" his case; instead, he maintains that many jurors did not disclose the extent of their exposure to his case. Having reviewed the record, we conclude that the district court adequately questioned jurors regarding their exposure to pretrial publicity, and it did not abuse its "wide discretion" in denying his motion for a change of venue. *See State v. Chambers*, 589 N.W.2d 466, 473 (Minn. 1999) ("The decision to grant or deny a motion for a change of venue is within the wide discretion of the trial court.").

In addition, DeLaCruz asserts that, because Detective Armendariz[10] was biased against him, the district court abused its discretion by not sequestering Armendariz during witness testimony. "[T]he question of sequestration of witnesses rests in the sound discretion of the trial court, and where there is no showing that failure to sequester witnesses was prejudicial to the accused, the court's refusal to require it does not in itself constitute reversible error." *State v. Garden*, 267 Minn. 97, 112, 125 N.W.2d 591, 601 (1963). DeLaCruz fails to specify which witnesses' testimony or how Armendariz's exposure to this unidentified testimony prejudiced his defense. Given Armendariz's familiarity with the state's evidence against DeLaCruz, we conclude that the district court did not abuse its discretion by not sequestering Armendariz.

---

[10] Armendariz was involved in the initial investigation into the offenses and DeLaCruz's later arrest.

#### *4. Sufficiency of the Evidence*

Finally, DeLaCruz argues that the district court erred in denying his motion for a verdict of acquittal, essentially challenging the sufficiency of the evidence. *See* Minn. R. Crim. P. 26.03, subd. 18(3) (allowing a defendant to move for a judgment of acquittal after the jury renders a guilty verdict). We review the denial of a motion for a judgment of acquittal de novo, *State v. McCormick,* 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013), and a motion for a judgment of acquittal is properly denied where the evidence, viewed in the light most favorable to the state, is sufficient to sustain a conviction. *State v. Slaughter*, 691 N.W.2d 70, 74–75 (Minn. 2005); *see McCormick*, 835 N.W.2d at 506 (noting that defendant's challenge to district court's denial of motion for judgment of acquittal required the court to examine sufficiency of the evidence). Having thoroughly reviewed the record, we conclude that, viewed in the light most favorable to the state, the evidence is sufficient to sustain his convictions of 20 counts. DeLaCruz was therefore not entitled to a judgment of acquittal.

## D E C I S I O N

Because rule 26.04, subdivision 1(3), is a claim-processing rule, the district court had jurisdiction over the appellant's amended new-trial motion, which was served after the deadline for serving new-trial motions expired. Additionally, the district court had discretion to consider the amended new-trial motion because the appellant established that he served a timely new-trial motion and offered satisfactory reasons for raising a new issue in the amended motion. By failing to exercise its discretion and instead rejecting the amended new-trial motion as time-barred, the district court abused its discretion. We

21

reverse the denial of the new-trial motion and remand for the district court to hear the amended new-trial motion on the merits. Because appellant's pro se arguments lack merit, we reject them.

**Reversed and remanded.**