GILDEA, Chief Justice.
Maureen Ndidiamaka Onyelobi was convicted of first-degree murder as an accomplice. On direct appeal, we affirmed her conviction. State v. Onyelobi (Onyelobi I ), 879 N.W.2d 334 (Minn. 2016). Onyelobi then sought postconviction relief, asserting several claims of error. The district court denied her petition without a hearing. Because we conclude that each of Onyelobi's claims is either procedurally barred or fails on the merits, we affirm the district court.
FACTS
Onyelobi was convicted of the murder of Anthony Fairbanks, under an accomplice *276 theory of liability.[1] At the time of his death, Fairbanks, his sister, and their mother were all heroin addicts. A syndicate consisting of Onyelobi, her boyfriend Maurice Wilson, and their friend David Johnson supplied Fairbanks and his family with heroin.
About a month before the murder, Fairbanks and Wilson were indicted as co-defendants for conspiracy to distribute heroin and possession with intent to distribute heroin. Wilson was arrested and placed in custody, but Fairbanks was not immediately apprehended.
On the day of Fairbanks' murder, Wilson called Onyelobi from jail and asked if she and Johnson had "take[n] care" of Fairbanks. When Onyelobi told Wilson that they had not, Wilson replied that "[i]f they catch that dude, I'm gone for the rest of my life." Onyelobi reassured Wilson that she and Johnson would "take care of it tonight" and that they had not yet done so because "[h]e always with somebody." When Onyelobi passed the phone to Johnson, Wilson warned him that "I go to court Monday, man" and that he needed Johnson to "be on top of that ... ASAP."
Later that day, around 9:30 p.m., Fairbanks arrived at his mother's apartment building. He informed his sister that he was leaving to purchase heroin from Onyelobi, and his mother heard him on the phone telling someone "[y]eah, Bro, I'm comin' right now, and I'm alone. I'm not coming with anybody. I'm by myself." Fairbanks left his mother's apartment around 9:50 p.m. and started walking southbound toward the location where his body was later discovered.
Shortly before 10:00 p.m., a witness in a housing development about two blocks from Fairbanks' mother's apartment heard three gunshots. The witness looked out of a window and saw a body lying on the side of the road as well as a running van stopped nearby. The witness could not see how many people were inside the van, and 5 to 10 seconds later it drove off to the north. The witness called 911, and police arrived shortly thereafter. Upon arrival, police discovered that Fairbanks was dead after having been shot in the head four times from a close distance.
During the investigation into the murder, Onyelobi became a person of interest. Police interviewed Fairbanks' mother and learned of the 9:50 p.m. phone call. After obtaining Fairbanks' cell records, police discovered that the phone call was from 651-208-* * * * (the 208 number). Fairbanks's sister told police that the 208 number belonged to Onyelobi and that she and Fairbanks would call this number to purchase heroin. In addition, police learned that Onyelobi was Wilson's girlfriend, that Wilson was in custody for crimes allegedly committed with Fairbanks, and that a van registered in Onyelobi's name matched the description of the van seen leaving the scene of the crime.
Given this information, police decided to locate Onyelobi and bring her in for questioning. By using cellular data connected to the 208 phone number and obtaining hotel records, police determined that Onyelobi was staying at a Red Roof Inn in Plymouth. Officers knocked on the door of Onyelobi's hotel room and Johnson answered. From the door, officers observed contraband. Officers entered the room, froze the scene, and waited for a search warrant. Onyelobi, while not present at first, arrived about 30 minutes later. Police eventually obtained a search warrant, *277 searched the room, and arrested Onyelobi for possession of a controlled substance.
After her arrest, Onyelobi was taken to the police station where she was read a Miranda warning and questioned by police. She admitted to her relationship with Wilson but denied being involved in Fairbanks' death. At some point, the officers questioning Onyelobi left the interrogation room. They continued to observe Onyelobi through a surveillance camera and watched her attempt to hide an object in an exposed electrical outlet. The officers reentered the interrogation room and discovered that the item was a small key.
Police recognized the key as belonging to a storage locker. After searching the area around the Red Roof Inn, police located a storage facility less than one mile from the hotel. Then, after calling the facility and confirming that Onyelobi had rented a storage unit there, police had a drug-detection dog sniff the seams of Onyelobi's storage unit. The dog alerted, indicating to officers that controlled substances were inside. Using this information, police sought and obtained a search warrant for the storage locker. Inside the storage locker, police found the murder weapon.
In addition, police obtained records and surveillance videos from the storage-unit facility. These items showed that Onyelobi had rented the storage unit on the day of the murder and visited it in the van less than an hour before the murder and again the following morning.
A Hennepin County grand jury indicted Onyelobi for first-degree murder under an accomplice-liability theory. The case proceeded to trial, and a jury found Onyelobi guilty of first-degree murder as an accomplice.
Onyelobi appealed her conviction to our court, raising several arguments for review. Her direct-appeal arguments included her contention that the district court erroneously instructed the jury on accomplice liability. In addition, Onyelobi raised four issues in a pro se supplemental brief. We determined that all of Onyelobi's arguments lacked merit and affirmed Onyelobi's conviction. Onyelobi I , 879 N.W.2d at 339.
On August 17, 2018, Onyelobi filed the present petition for postconviction relief. In it, she argues that her conviction should be set aside, or, in the alternative, that she should be granted a new trial. Onyelobi asserts four claims: (1) police lacked probable cause to search her storage locker; (2) the jury instructions were improper; (3) she received ineffective assistance of trial counsel; and (4) she received ineffective assistance of appellate counsel. The district court denied Onyelobi's petition without a hearing, reasoning that Onyelobi's first three arguments were procedurally barred and that her ineffective-assistance-of-appellate-counsel claim lacked merit. Onyelobi appeals.
ANALYSIS
A person convicted of a crime who claims that her conviction was obtained in violation of her constitutional or statutory rights may file a petition for postconviction relief under Minn. Stat. § 590.01, subd. 1(1) (2018). District courts are required to hold an evidentiary hearing and make findings of fact and conclusions of law "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2018). We review the denial of a postconviction petition for abuse of discretion and any embedded issues of law de novo. Reed v. State , 793 N.W.2d 725, 729 (Minn. 2010).
I.
The district court determined that Onyelobi's first three claims were procedurally *278 barred. We examine these claims first. In State v. Knaffla , we held that once a petitioner has directly appealed her criminal conviction, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 309 Minn. 246, 243 N.W.2d 737, 741 (1976) ; see also Minn. Stat. § 590.01, subd. 1 ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."). This rule has been extended to all claims that the petitioner knew or should have known about at the time of direct appeal. See Black v. State , 560 N.W.2d 83, 85 (Minn. 1997) ; see also Lussier v. State , 853 N.W.2d 149, 152 (Minn. 2014).
Taking each of Onyelobi's first three claims in turn, it is clear that our rule from Knaffla bars review. First, Onyelobi argues that the police lacked probable cause to search her storage locker, and, therefore, evidence obtained as a result of that search should not have been presented to the grand jury or at trial. But all of the facts relevant to the search of Onyelobi's storage locker were available at the time of her direct appeal. Accordingly, Onyelobi knew or should have known of this claim and should have raised it on direct appeal. See Leake v. State , 737 N.W.2d 531, 536 (Minn. 2007) (concluding that the petitioner either knew or should have known of the issue raised in his postconviction petition at the time of his direct appeal because the relevant facts were "evident from the trial record").[2]
Second, Onyelobi argues that the district court erroneously instructed the jury on accomplice liability. Specifically, Onyelobi claims that the instructions improperly asked the jury to determine whether Onyelobi aided and abetted the commission of "a crime" rather than whether she aided and abetted first-degree murder. According to Onyelobi, this error "allowed the jury to determine [that she] was guilty of first-degree murder if she was involved in aiding and abetting any crime." But Onyelobi already raised this claim on direct appeal. See Onyelobi I , 879 N.W.2d at 352-54. Because we considered and rejected the same challenge to the jury instructions on direct appeal, Onyelobi cannot relitigate it now. See Buckingham v. State , 799 N.W.2d 229, 232 (Minn. 2011) (holding that the petitioner's arguments were Knaffla barred because we had "expressly considered and rejected identical arguments in [petitioner's] direct appeal"); see also Minn. Stat. § 590.04, subd. 3 (2018) ("The court may summarily deny ... a petition when the issues raised in it have previously been decided by the court of appeals or the supreme court in the same case.").
Third, Onyelobi claims that she received ineffective assistance of trial counsel. She argues that trial counsel was ineffective for three reasons: (1) he failed to challenge the admissibility of evidence obtained from the storage locker; (2) he conceded that she was guilty of assault without her consent; and (3) he failed to contest the admissibility of jail calls for which the prosecution had not authenticated Onyelobi's voice. This claim is also Knaffla barred. At the *279 time of direct appeal, Onyelobi knew or should have known that trial counsel had not challenged the storage-locker search, had conceded that she was guilty of assault, and had not objected to the admission of the jail calls. Because Onyelobi knew or should have known of trial counsel's alleged errors, her ineffective-assistance-of-trial-counsel claim is barred. See McKenzie v. State , 754 N.W.2d 366, 369 (Minn. 2008).
Although Onyelobi should have raised these claims on direct appeal, she argues that an exception to the Knaffla bar applies and that we should review her claims nonetheless.[3] Specifically, Onyelobi argues that the interests-of-justice exception applies. This exception authorizes review of an otherwise barred claim if the claim has merit and was "asserted without deliberate or inexcusable delay." Wright v. State , 765 N.W.2d 85, 90 (Minn. 2009). We are not persuaded.
Onyelobi's jury-instruction claim does not qualify for an exception. It is well-established that "the Knaffla exceptions only apply to claims that a defendant failed to raise on direct appeal." Brocks v. State , 753 N.W.2d 672, 675 (Minn. 2008) ; see also, e.g. , Swaney v. State , 882 N.W.2d 207, 215 (Minn. 2016) (" Knaffla's interests-of-justice exception ... cannot apply to [petitioner's] claim ... because that claim was already raised and decided on direct appeal."); Lussier , 853 N.W.2d at 152 n.2 ("Because this issue was previously raised ... we need not consider the Knaffla exceptions ...."). Because Onyelobi already raised an identical challenge to the jury instructions on direct appeal, the interests-of-justice exception is not available now.
Onyelobi's other two claims fail to satisfy the exception because Onyelobi has not shown that her failure to raise these claims was excusable. See Wright , 765 N.W.2d at 90. Onyelobi first argues that she was prevented from bringing her storage-locker claim because her counsel on direct appeal never met with her. This argument, however, is contrary to the record. Onyelobi filed a supplemental pro se brief on direct appeal, demonstrating her ability to raise issues not addressed by her attorney. It is thus clear from the record that Onyelobi's failure to challenge the storage-locker search was inexcusable, and, therefore, she cannot obtain review now through an exception to the Knaffla bar. See Swaney , 882 N.W.2d at 215-16 (concluding that the claim did not satisfy the interests-of-justice exception because petitioner "offer[ed] no argument as to why his failure to raise this issue in his pro se brief on direct appeal was not deliberate and inexcusable").
In addition, Onyelobi argues that she did not deliberately fail to raise her ineffective-assistance-of-trial-counsel claim because it could not have been decided based on the trial record. It is true that "a claim of ineffective assistance of trial counsel is not barred by Knaffla if it cannot be determined from the district court record and requires additional evidence, such as that involving attorney-client communications." Torres v. State , 688 N.W.2d 569, 572 (Minn. 2004). But Onyelobi does not identify any additional evidence that is *280 needed to resolve her ineffective-assistance-of-trial-counsel claim. It is apparent from the record that Onyelobi's trial counsel did not directly challenge the storage-locker search, conceded her guilt of assault, and did not object to the admission of the jail calls. Accordingly, because Onyelobi does not point to anything that establishes she did not deliberately fail to raise it, Onyelobi's ineffective-assistance-of-trial-counsel claim does not qualify for the exception. See id. ("A claim of ineffective assistance of trial counsel that can be decided on the basis of the trial court record must be brought on direct appeal and is procedurally barred when raised in a postconviction petition.").
In sum, the district court did not abuse its discretion by holding that Onyelobi's first three claims were Knaffla barred and that no exception to that bar applies.
II.
We turn now to Onyelobi's fourth claim. Specifically, Onyelobi argues that she received ineffective assistance of appellate counsel on her direct appeal. In making this claim, Onyelobi raises several of the arguments addressed above for a second time. Specifically, Onyelobi argues that her appellate counsel was ineffective because he did not challenge the ineffectiveness of trial counsel. In turn, Onyelobi argues that trial counsel was ineffective because he did not attack the validity of the storage-locker search and conceded that Onyelobi was guilty of assault. According to Onyelobi, these claims would have been successful if raised on direct appeal, and, therefore, the failure of her appellate lawyer to raise these arguments was ineffective assistance of appellate counsel.
Unlike claims for ineffective assistance of trial counsel, "[c]laims of ineffective assistance of appellate counsel on direct appeal are not barred by the Knaffla rule in a first postconviction appeal because they could not have been brought at any earlier time."[4] Leake , 737 N.W.2d at 536 (emphasis added). To prevail on an ineffective-assistance-of-appellate-counsel claim, Onyelobi must show that (1) her counsel's representation on direct appeal "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington , 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; see also Dukes v. State , 621 N.W.2d 246, 252 (Minn. 2001). We "may analyze the Strickland requirements in either order and may dispose of a claim on one prong without considering the other." Lussier , 853 N.W.2d at 154. When determining whether an attorney's performance fell below an objective standard of reasonableness, we generally do not second-guess matters of trial strategy. Leake , 737 N.W.2d at 536. This includes appellate counsel's decision not to raise a claim that she "could have legitimately concluded would not prevail." Reed v. State , 793 N.W.2d 725, 736 (Minn. 2010). Thus, to determine whether Onyelobi's appellate counsel was ineffective, we must look to the merits of Onyelobi's underlying claims.
A.
First, Onyelobi asserts that counsel was ineffective for not challenging the *281 search of her locker because the warrant authorizing the search was not supported by probable cause. She argues that the only information police had to justify the search of her storage locker was the presence of a key on her person when she was arrested. According to Onyelobi, this fact alone "does not give rise to enough suspicion to just[ify] the issuance of a search warrant."
Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates , 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing judge is tasked with making "a practical, common-sense decision," State v. Yarbrough , 841 N.W.2d 619, 622 (Minn. 2014), and a reviewing court is limited to determining whether there was a "substantial basis" for that decision, State v. Harris , 589 N.W.2d 782, 788 (Minn. 1999) (citation omitted) (internal quotation marks omitted). When we review a probable-cause determination, we consider "the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items." Yarbrough , 841 N.W.2d at 623.
Here, the judge issuing the search warrant had a substantial factual basis for concluding that either contraband or evidence related to Fairbanks' murder would be found in Onyelobi's storage unit. The search warrant affidavit recited the following facts: (1) Fairbanks received a phone call from a number associated with Onyelobi minutes before he was murdered; (2) Onyelobi sold Fairbanks and his family heroin; (3) a search warrant of Onyelobi's hotel room uncovered narcotics and paraphernalia associated with the sale of narcotics; (4) when left alone in an interrogation room, Onyelobi tried to hide a key to a storage locker in an exposed electrical outlet; (5) Onyelobi rented a storage locker less than 1 mile from her hotel; and (6) a drug-detection dog sniffed the seams of Onyelobi's storage unit and indicated that controlled substances were inside. These facts are unquestionably enough to provide a "common-sense" inference that Onyelobi's storage locker contained evidence of a crime. And the information connecting Onyelobi to Fairbanks' murder and the sale of narcotics created a fair probability that the items sought would be in the storage locker. Accordingly, Onyelobi's challenge to the storage-locker warrant is without merit and she was not prejudiced by appellate counsel's failure to make the same challenge on direct appeal.[5]
*282 B.
For her last argument, Onyelobi claims that her appellate counsel was ineffective because he failed to challenge trial counsel's improper concession that she was guilty of assault. While defendants must generally prove that the receipt of ineffective assistance of counsel actually prejudiced them, "there are some Sixth Amendment right to counsel violations in which prejudice to the defendant will be presumed." Dukes v. State , 621 N.W.2d 246, 254 (Minn. 2001). One such violation is "when counsel admits a defendant's guilt without the consent of the defendant." Id. Because "[t]he decision to concede guilt is the defendant's decision alone," the defendant "is entitled to a new trial, regardless of whether he would have been convicted without the admission." State v. Prtine , 784 N.W.2d 303, 318 (Minn. 2010).
To determine whether a defendant consented to counsel's admission, however, there need not be a "personal, on-the-record consent." Id. It is enough if the defendant acquiesced to counsel's concession, which can be gleaned from the trial record. State v. Provost , 490 N.W.2d 93, 97 (Minn. 1992). Specifically, we have held that "when trial counsel uses the same strategy from beginning to end of trial and the defendant does not object, the defendant acquiesces in the admission." Prtine , 784 N.W.2d at 318. The district court concluded that Onyelobi acquiesced to trial counsel's strategy. We agree.
The record shows that trial counsel's strategy throughout the entire case was to concede that Onyelobi was involved in the incident, but to argue that she was only aware that Johnson intended to threaten Fairbanks, not kill him. First, trial counsel made a pre-trial request that the jury be instructed on the lesser-included offense of assault based on his theory that Onyelobi was not the shooter and that she did not know that Johnson's "intent was to do anything other than threaten with a gun." Then, in opening statements, trial counsel argued that the only reasonable inference the jury would be able to draw from the State's evidence is that Onyelobi understood "what was going to happen was going to be a threat, and that that threat was perhaps going to be done with a gun-clearly a crime-but not the crime that the State has charged my client with." Again, during cross examination of a witness, trial counsel asked if the witness would agree that "oftentimes the girlfriends, based on your training and experience, are not fully informed as to what's going on," alluding to his strategy. Last, in closing arguments, trial counsel reiterated his theory one final time, stating that a "fair reasoning of the evidence is that Ms. Onyelobi understood that this was going to be a threat, a threat with a gun, clearly a crime, but that there was no intent to murder." At no point during any of these concessions did Onyelobi object. Thus, under our case law, *283 Onyelobi acquiesced to trial counsel's strategy and cannot now challenge these concessions as ineffective assistance of counsel. See Prtine , 784 N.W.2d at 318.
Instead of arguing that she somehow objected to trial counsel's concessions, Onyelobi asserts that she could not have acquiesced because she did not realize the impact of the admission. According to Onyelobi, because she did not know that the jury would be instructed on "an expansive liability theory," she did not know that counsel's admission of assault was essentially an admission of first-degree murder. This argument fails, however, as an attempt to relitigate the validity of the jury instructions that we have already considered and rejected. See Rhodes v. State , 735 N.W.2d 315, 319 (Minn. 2007) (refusing to consider an argument that was "simply a reformulation" of petitioner's claim at trial and on direct appeal). Onyelobi's argument rests on the premise that the jury could have convicted her of first-degree murder even if she was only guilty of assault. But we rejected that exact argument on her direct appeal, concluding that "the district court's instructions did not leave room for the jury to convict Onyelobi of first-degree premeditated murder as an accomplice when she merely intended to aid in some crime other than murder." Onyelobi I , 879 N.W.2d at 354. Given this holding, Onyelobi's argument fails on the merits and her appellate counsel was not ineffective for choosing not to raise it.
In sum, Onyelobi's claims are procedurally barred from consideration as standalone claims and fail on the merits when considered as underlying arguments in an ineffective-assistance-of-appellate-counsel claim. Based on our analysis, we hold that the district court did not err in denying Onyelobi's petition without an evidentiary hearing.
CONCLUSION
For the foregoing reasons, we affirm the decision of the district court.
Affirmed.

The facts surrounding the murder and subsequent investigation are set out in more detail in our opinion on Onyelobi's direct appeal. See Onyelobi I , 879 N.W.2d at 339-42. We focus here on the facts that are relevant to this proceeding.

As part of her challenge to the grand jury indictment, Onyelobi also claims that a police officer testified before the grand jury that a warrant had been obtained to locate Onyelobi at the Red Roof Inn using her cell phone. According to Onyelobi, no warrant was ever produced by police in this case, which "is a strong indication [that] this never took place or that if it did take place, it occurred without proper judicial approval." This claim is also Knaffla barred because Onyelobi knew or should have known of it at the time of direct appeal but did not raise it. See Leake , 737 N.W.2d at 536.

We have yet to decide whether our common-law exceptions to the Knaffla bar survived the 2005 amendments to the postconviction statute. See, e.g. , Davis v. State , 880 N.W.2d 373, 377 (Minn. 2016) ; Hooper v. State , 838 N.W.2d 775, 787-88 n.2 (Minn. 2013). In addition, the State argues that Onyelobi "did not assert in her petition for postconviction relief that she met any of the exceptions" to Knaffla , and that she should not be allowed to argue "for the first time on appeal that her claims meet the interests of justice exception." We need not decide either of these issues, however, because Onyelobi cannot satisfy the interests-of-justice exception.

The State argues, however, that Onyelobi's ineffective-assistance-of-appellate-counsel claim should be Knaffla barred. According to the State, Onyelobi knew that her appellate counsel was not challenging the effectiveness of trial counsel at the time of her direct appeal, but failed to include this issue in her pro se brief. Because we conclude that Onyelobi's ineffective-assistance-of-appellate-counsel claim fails on the merits, we need not decide whether Knaffla should bar review.

In her brief on appeal, Onyelobi's challenge to the storage-locker search seems to have shifted from the challenge raised in her petition. In addition to her attacks on the search warrant, Onyelobi also argues that the police's pre-warrant conduct tainted the subsequent warrant. Even assuming that Onyelobi is refining her argument, rather than raising new arguments on appeal, see Jacobson v. $55,900 in U.S. Currency , 728 N.W.2d 510, 523 (Minn. 2007) (distinguishing between a refined argument, which may be considered by an appellate court, and a new argument, which may not), Onyelobi's new arguments fail on the merits.
First, Onyelobi claims that "prior to obtaining a warrant authorizing the search of the storage locker, [police], illegally, gained access prematurely to such storage locker by inserting a key that was purportedly found after the interrogation of Ms. Onyelobi." But Onyelobi does not include any citation to the record indicating that this conduct took place, nor does she allege that there is any factual support outside of the record for her contention. Further, Onyelobi does not cite any authority indicating that inserting a key is an unlawful search in and of itself. Because this claim involves no "more than argumentative assertions without factual support," it fails. Leake , 737 N.W.2d at 535 (citation omitted) (internal quotation marks omitted).
Second, Onyelobi asserts that the dog sniff of the outside of her storage locker was an unlawful search under our decision in State v. Carter , 697 N.W.2d 199 (Minn. 2005). In that case, we held that a dog sniff of the door of a storage unit was a search under the Minnesota Constitution. Id. at 211. Given the significant government interest in using drug-detection dogs, however, we held that a warrantless dog sniff of the outside of a storage unit was permissible if "(1) the police are able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and (2) the police are lawfully present in the place where the canine sniff is conducted." Id. at 212. When Onyelobi attempted to hide the storage-locker key in the police interrogation room, she provided police with reasonable grounds for believing that contraband would be inside the storage locker that the key opened. Accordingly, because Onyelobi does not contest that police were not lawfully present in the place where the canine sniff was conducted, police in this case satisfied the requirements from Carter .