STATE OF MINNESOTA

IN SUPREME COURT

A24-0930

<table>
<tr><td>Hennepin County</td><td>Hennesy, J.<br>Took no part, Gaïtas, J.</td></tr>
<tr><td>Leroy Roderick Paul,</td><td></td></tr>
<tr><td style="text-align:center">Appellant,</td><td></td></tr>
<tr><td>vs.</td><td>Filed: April 30, 2025<br>Office of Appellate Courts</td></tr>
<tr><td>State of Minnesota,</td><td></td></tr>
<tr><td style="text-align:center">Respondent.</td><td></td></tr>
</table>

_____

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Inver Grove Heights, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Elizabeth Scoggin, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

The district court did not abuse its discretion when it summarily denied appellant's petition for postconviction relief because, even accepting the evidence presented in support of the petition as true, appellant was conclusively entitled to no relief.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

HENNESY, Justice.

Following a jury trial, appellant Leroy Roderick Paul was convicted of first-degree murder during a drive-by shooting. Minn. Stat. § 609.185(a)(3) (2022). On direct appeal, we affirmed his conviction. *State v. Paul*, 716 N.W.2d 329 (Minn. 2006). More than 16 years later, Paul filed a petition for postconviction relief asserting that the State had violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by failing to disclose the specific terms of a plea agreement offered to one of the State's witnesses to testify against Paul. The district court denied the petition without an evidentiary hearing, concluding that there was no factual support for Paul's assertion that the State had not disclosed the plea agreement to him, and that, even if there were factual support for that assertion, the evidence he presented failed to satisfy the newly discovered evidence and interests of justice exceptions to the two-year statutory time bar to filing a petition for postconviction relief. Because Paul is conclusively entitled to no relief, even when the petition and the files and records of the proceeding are viewed in a light most favorable to him, we affirm the district court's decision.

## FACTS

On November 7, 2002, Fred Williamson was fatally shot while in a car stopped at a red light in Minneapolis. B.H.[1] was in Williamson's vehicle when Williamson was shot, but B.H. told police that he "ducked down" and "didn't see anything."[2]

B.H. was later indicted in federal court on an unrelated drug charge. He negotiated a plea deal in his federal case which required him to provide "substantial assistance" in Williamson's murder investigation. The federal prosecutor agreed to file a motion for a downward sentencing departure if B.H. provided substantial assistance, but the agreement left the specific length of the sentence to the federal district court judge's discretion.

Following the investigation into the circumstances of Williamson's death, a grand jury indicted Paul for first-degree murder during a drive-by shooting. Minn. Stat. § 609.185(a)(3). Paul demanded a jury trial.

At Paul's trial, contrary to his earlier statements to police, B.H. testified that he "clearly" recognized Paul as the person who fired the shots that killed Williamson. B.H. was the only eyewitness who identified Paul as Williamson's shooter.[3] On direct examination, the State inquired into B.H.'s federal plea deal:

---

[1]    We do not provide the full name of witnesses in the interest of protecting their privacy.

[2]    Additional details about the murder can be found in *Paul*, 716 N.W.2d 329.

[3]    While B.H. was the only eyewitness to identify Paul as the shooter, the State presented other evidence that Paul was the shooter. For instance, another of the State's witnesses, K.S., testified that on the night of November 7, 2002, Paul said that he thought he had killed Williamson.

Q: Okay. And you now have received some consideration for this testimony; is that correct?

A: Yes.

Q: Okay. You have pled guilty to a federal charge, it's a drug charge; is that correct?

A: Correct.

. . .

Q: And you have not been given a guarantee as to what your sentence is going to be; is that fairly accurate?

A: That's correct.

Q: And that you were asked to provide what's called substantial assistance to both federal and state prosecutors; is that correct?

A: Correct.

Q: And if you did that and if it was truthful, the information that you provided, that the district attorney for the federal system, the U.S. Attorney, would move for what's called a downward departure from the Federal Sentencing Guidelines; is that correct?

A: That's correct.

Q: And the judge still is the one who will determine whether or not you will get any reduced sentence based on your testimony here and any other assistance you've provided; is that correct?

A: Yes.

On cross-examination, Paul's counsel asked B.H. about the nature and circumstances of his plea agreement:

Q. Part of your agreement was that you would cooperate against co-defendants, and cooperate against other suspects in other cases, correct?

A. Correct.

Q. You, in fact, went in and pled guilty on February 18th, 2004; is that correct?

A. That's correct.

. . .

4

Q.  And you knew that you were Guideline range for sentencing purposes between 151 and 181 months, correct?
A.  Correct.
Q.  Twelve to fifteen years, right?
A.  Yeah.

. . .

Q.  Part of that agreement was that if you rendered what the government called substantial assistance, the federal prosecutor's office will then make a motion to your federal judge asking to have that sentence reduced, correct?
A.  Correct.
Q.  And when we talk about substantial assistance; you know that whatever you say here today, this prosecutor's going to contact the federal prosecutor and let him know what you've done, whether or not that constitutes substantial assistance, correct?
A.  Correct.

In closing arguments, Paul's counsel argued that B.H. had a motive to lie; specifically, he noted that B.H. had to "provide substantial assistance in order . . . to get a break in federal court" and "[t]hat's the motive."

The jury found Paul guilty of first-degree murder during a drive-by shooting. Minn. Stat. § 609.185(a)(3). The district court sentenced him to the mandatory sentence of life in prison. Paul filed a direct appeal on issues unrelated to the present petition. We affirmed his conviction. *See Paul*, 716 N.W.2d 329.

Sixteen years later, in 2023, Paul received a transcript of B.H.'s 2005 federal sentencing hearing. The transcript reveals that, in describing B.H.'s plea deal, the federal prosecutor told the judge:

I think the sentence range was appropriate without his cooperation and with it he should receive less. I made a deal with [B.H.'s attorney] I wouldn't suggest to the court a number. I will leave it to the court's wise discretion as

5

to how this should be rewarded. It is what it is. [B.H.] was instrumental in a murder case, and for that he should receive some credit.

The federal prosecutor did not recommend a specific length of sentence that B.H. should receive. B.H.'s attorney argued for an 18-month prison sentence. After granting the government's motion for a downward departure, the federal district court judge sentenced B.H. to 91 months in prison.

On December 14, 2023, Paul filed this postconviction petition. In his petition, Paul asserted that B.H. had negotiated "a deal for a specific sentence" which the State failed to disclose in violation of *Brady* and *Giglio*.[4] Based on that assertion, Paul argued that he was entitled to a new trial. The district court denied the petition without an evidentiary hearing, concluding that there was no factual support for Paul's assertion that B.H. negotiated a specific sentence, and that even if there were factual support for that assertion, Paul failed to satisfy the newly discovered evidence and interests of justice exceptions to the two-year statutory time bar to filing petitions for postconviction relief.[5] Paul appeals, arguing that the district court abused its discretion when it denied his petition for postconviction relief without holding an evidentiary hearing.

---

[4]    *Brady* and *Giglio* require the State to turn over exculpatory and impeachment evidence. *Ezeka v. State*, 16 N.W.3d 768, 778 (Minn. 2025) (citing *Brady*, 373 U.S. at 83 and *Giglio*, 405 U.S. at 92).

[5]    The district court also concluded that the petition was procedurally barred under *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). "Under the *Knaffla* rule, a postconviction claim that was raised, known, or should have been known at the time of the petitioner's direct appeal will not be considered in a subsequent postconviction petition." *Hopper v. State*, 888 N.W.2d 138, 143 (Minn. 2016). Because we conclude Paul is not entitled to relief under the postconviction statutes, we need not decide whether Paul's petition was also barred by *Knaffla*.

# ANALYSIS

We review a district court's decision to summarily deny a postconviction petition for an abuse of discretion. *Munt v. State*, 984 N.W.2d 242, 249 (Minn. 2023). A district court abuses its discretion when it "exercise[s] its discretion in an arbitrary or capricious manner, base[s] its ruling on an erroneous view of the law, or ma[kes] clearly erroneous factual findings." *Reed v. State*, 793 N.W.2d 725, 729 (Minn. 2010). We review a district court's legal conclusions de novo and its findings of fact for clear error. *Greer v. State*, 836 N.W.2d 520, 522 (Minn. 2013).

A district court may summarily deny a postconviction petition without holding an evidentiary hearing when "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2024). Before summarily denying relief, a district court must accept the evidence presented in support of the petition as true. *Williams v. State*, 5 N.W.3d 399, 407 (Minn. 2024). The district court may also summarily deny a postconviction petition that is untimely under Minn. Stat. § 590.01, subd. 4(a), which limits the time for filing the petition to within two years of an appellate court's disposition of the petitioner's direct appeal. Minn. Stat. § 590.01, subd. 4(a) (2024).

The district court did not abuse its discretion in summarily denying Paul's postconviction relief petition because, even assuming the evidence presented in support of the petition is true, it does not support Paul's claims. Minn. Stat. § 590.04, subd. 1. Additionally, Paul's claims are untimely. Minn. Stat. § 590.01, subd. 4(a).

7

Paul asserts that he is entitled to postconviction relief because the State failed to disclose to him that B.H. had negotiated "a deal for a specific sentence." In support of this assertion, Paul submitted the transcript of B.H.'s federal sentencing hearing. But the sentencing transcript provides no factual support for Paul's assertion. On the contrary, the transcript confirms that B.H. had *not* negotiated "a deal for a specific sentence" and that the agreement B.H. had with the federal prosecutor was precisely the same agreement the State had disclosed to Paul's attorney and that both attorneys questioned B.H. about at Paul's trial. At Paul's trial, B.H. testified that he had accepted a plea deal in his federal case, he was testifying to provide substantial assistance to the State, if his testimony was truthful the federal prosecutor would move for a downward sentencing departure, and the federal district court judge would ultimately decide the length of his sentence. B.H.'s sentencing transcript confirms that this was the entirety of the agreement—the prosecutor moved for a downward departure without suggesting a specific sentence, B.H.'s attorney requested an 18-month sentence, and the federal district court judge imposed a sentence of 91 months in prison.[6] Paul did not present any other evidence to support his assertion that B.H. had negotiated "a deal for a specific sentence." Because the evidence Paul presented in support of his petition, even if accepted as true, failed to provide factual support for his assertion that B.H. had negotiated a specific sentence, the district court did not abuse its discretion when it denied the petition without holding an evidentiary hearing.

---

[6] The only fact reflected in the transcript that was not communicated to the jury in Paul's trial was the federal district court judge's decision to impose a sentence of 91 months' imprisonment, which did not occur until after Paul's trial was complete.

8

Even if the sentencing transcript had supported Paul's assertion that B.H. had negotiated "a deal for a specific sentence," we would still affirm the denial of postconviction relief because the district court did not abuse its discretion when it determined that Paul's petition was untimely under the two-year statutory time bar. Minn. Stat. § 590.01, subd. 4(a).

Petitions for postconviction relief may not be filed "more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(b) (2022).[7] In June 2006, we affirmed Paul's conviction on direct appeal. The present petition was filed in December 2023. The petition is time barred unless it falls under an exception to the statutory time bar enumerated in Minn. Stat. § 590.01, subd. 4(b).

---

[7] In his reply brief, Paul argues for the first time that the amelioration doctrine requires us to apply the 2024 amendments to Minn. Stat. § 590.01, subd. 4(b)(2), in this case. *See State v. Kirby*, 898 N.W.2d 485, 488 (Minn. 2017) (noting that the amelioration doctrine applies amended statutory language to ongoing cases when a final judgment has not yet been reached). The 2024 amendments removed the fifth element of the newly discovered evidence test—that a petitioner must establish innocence by clear and convincing evidence. Act of May 24, 2024, ch. 123, art. 4, § 9, 2024 Minn. Laws 2215, 2259 (codified as amended at Minn. Stat. § 590.01, subd. 4(b)(2) (2024)). The State has moved to strike this portion of the reply brief. In accordance with well-established law, we grant the State's motion to strike. *See State v. Yang*, 774 N.W.2d 539, 558 (Minn. 2009) (concluding that a matter raised for the first time in a reply brief is waived and should be stricken); *see also* Minn. R. Civ. App. P. 128.02, subd. 3. But even if the amelioration argument had been timely raised, we would not have reached the issue because, as explained below, the district court relied on the less stringent *Rainer* test, which does not require clear and convincing evidence of innocence, and because the evidence in question was used solely for impeachment purposes. *See Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997).

Paul argues that his petition falls under two exceptions to the statutory time bar: the "newly discovered evidence" exception and the "interests of justice" exception. We disagree.

Under the newly discovered evidence exception to the statutory time bar, a petitioner must prove that the evidence:

> (1) is newly discovered; (2) could not have been ascertained by the exercise of due diligence by the petitioner or the petitioner's attorney within the 2-year time-bar for filing a petition; (3) is not cumulative to evidence presented at trial; (4) is not for impeachment purposes; and (5) establishes by the clear and convincing standard that petitioner is innocent of the offenses for which he was convicted.[8]

*Riley v. State*, 819 N.W.2d 162, 168 (Minn. 2012); *see* Minn. Stat. § 590.01, subd. 4(b)(2). All five requirements must be satisfied to obtain relief. *Riley*, 819 N.W.2d at 168.

Even if the federal sentencing transcript had supported Paul's assertion that B.H. had negotiated "a deal for a specific sentence," Paul failed to satisfy the fourth requirement of the statutory exception—that the newly discovered evidence is not "for impeachment purposes." Minn. Stat. § 590.01, subd. 4(b)(2). During Paul's trial, his attorney used B.H.'s plea deal to impeach B.H.'s credibility on cross-examination and then argued in

---

[8] The district court did not analyze Paul's postconviction claim under the newly discovered evidence exception to the statutory time bar. Instead, it applied the less stringent newly discovered evidence test from *Rainer*, 566 N.W.2d 692, which resembles the statutory test, but the burdens of proof required in the final step of each test differ. We have held that the *Rainer* test should only be used to evaluate the substance of postconviction claims "when neither the statute of limitations nor *Knaffla* procedurally bars the claim." *Onyelobi v. State*, 966 N.W.2d 235, 237 n.3 (Minn. 2021). We conclude, however, that the district court's reliance on the *Rainer* test was harmless because the requirements of the *Rainer* test are less stringent than the requirements of Minn. Stat. § 590.01, subd. 4(b)(2) (2022). *Roby v. State*, 808 N.W.2d 20, 26 n.5 (Minn. 2011).

closing that the plea deal gave B.H. a motive to lie. Paul alleges nothing to suggest that the evidence that B.H. had negotiated a specific sentence could be used for any purpose other than impeachment.[9] Because Paul failed to satisfy the fourth requirement of the statutory exception, the district court did not abuse its discretion when it determined that his petition did not qualify under the newly discovered evidence exception to the two-year statutory time bar. Minn. Stat. § 590.01, subd. 4(a).

Under the interests of justice exception to the statutory time bar, a petitioner may file for postconviction relief after the two-year deadline if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). In arguing that he has satisfied this exception, Paul relies on *Gassler v. State*, 787 N.W.2d 575, 586–87 (Minn. 2010). In *Gassler*, we acknowledged that we had never identified the showing required of a petitioner to obtain relief under the interests of justice exception set forth in Minn. Stat. § 590.01, subd. 4(b)(5). *Id.* We noted that the interests of justice exception generally applies only in "exceptional situations." *Id.* We reviewed other contexts in which we have applied the interests of justice exception (for example, in the contexts of the *Knaffla* rule[10] or reviewing a motion

---

[9]    That the details of B.H.'s plea deal were actually used to impeach him at Paul's trial supports an argument that Paul also failed to satisfy the first and third requirements of Minn. Stat. § 590.01, subd. 4(b)(2). But because the failure to satisfy any one of the five requirements is determinative, we need not consider whether Paul satisfied the remaining four.

[10]    *Knaffla*, 243 N.W.2d at 741. We have yet to decide whether the common-law exceptions to the *Knaffla* bar survived the 2005 amendments to the postconviction statute. *Onyelobi v. State*, 932 N.W.2d 272, 279 n.3 (Minn. 2019). Because we resolve this case

11

for a new trial) in order to determine the appropriate analysis for deciding whether Gassler's case qualified as a similarly exceptional situation. *Id.* Finally, we identified a nonexclusive list of factors we have used in analyzing whether the interests of justice exception has applied and applied those factors to Gassler's claim. *Id.*

Paul argues that we should conduct the *Gassler* analysis here to determine whether the interests of justice exception set forth in Minn. Stat. § 590.01, subd. 4(b)(5), applies. But Paul's reliance on *Gassler* is misplaced. Contrary to the interests of justice exception in other contexts, after our decision in *Gassler* we have clarified that, in the context of Minn. Stat. § 590.01, subd. 4(b)(5), the interests of justice exception is "triggered by an injustice that caused the petitioner to miss the primary deadline in subdivision 4(a) and not the substantive claims in the petition." *Caldwell v. State*, 976 N.W.2d 131, 141 (Minn. 2022) (emphasis omitted) (citations omitted) (internal quotation marks omitted). Paul does not allege any injustice that caused him to miss the two-year primary deadline; he argues only that he has met the interests of justice exception because his claim has substantive merit. Because Paul failed to allege that any injustice caused him to miss the deadline in Minn. Stat. § 590.01, subd. 4(a), the district court did not abuse its discretion when it determined that his petition did not qualify under the interests of justice exception.

\* \* \*

Because the petition, files, and records of the proceeding do not support Paul's argument, he is conclusively entitled to no relief. Additionally, Paul did not establish any

---

on other grounds and do not reach the *Knaffa* question here, we need not address the *Knaffla* common law exceptions.

12

exception to the two-year statutory time bar.  Therefore, the district court did not abuse its discretion in summarily denying the petition.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.


GAÏTAS, J., took no part in the consideration or decision of this case.